JAMES F. EDRINGTON v. JAMES S. NEWLAND ET AL.

(Case No. 1196–196.)

1. ACTION — TRESPASS TO TRY TITLE.— One who receives a deed absolute on its face for money loaned, but who executes contemporaneously an instrument binding himself to reconvey on repayment of purchase money, is but a mortgagee; not being entitled as such to the possession of the premises, his remedy is to foreclose, and this cannot be done in the form of an action of trespass to try title.

2. PARTIES — SEQUESTRATION — DAMAGES.— The husband is the only necessary or proper party in a suit to recover damages for the wrongful seizure under sequestration of the community property.

APPEAL from Brazos. Tried below before the Hon. Spencer Ford.

Action of trespass to try title, brought by Edrington against Newland, to recover two certain lots described in the petition, lying in the city of Bryan, with the houses and improvements thereon. Simultaneously with the filing of the petition, with appropriate allegations therefor, the plaintiff prayed for and sued out against the property a writ of sequestration on the 13th of December, 1877, which was executed the same day by the sheriff. The defendant did not replevy; he answered by a general demurrer and general denial. He also filed a special answer alleging the property to be his homestead, and setting up that the pretended title of plaintiff, while a deed absolute upon its face, was nothing more than a security for a sum of money, with excessive usurious interest thereon, advanced by plaintiff for defendant's use. He further specially answered, alleging, amongst other things, that the property then being his homestead, on 16th day of February, 1876, he executed to John N. Henderson, Esq., in satisfaction for a claim he held against him for collection, a deed of trust upon the property in question; that the deed of trust was paid April 15, 1876, by one Moore, who took a transfer from Henderson of the debt and lien; that on June 7, 1876, Henderson foreclosed the lien, and Moore purchased the

property for $125 and took Henderson's deed, and used the same to coerce out of appellee an amount of money in excess of the original demand (which was about $200), and that it was this money ($280) which plaintiff had advanced to Moore for defendant's use, and took Moore's deed to the property as security for the same, with five per cent. per month interest. It was also alleged that Mrs. New-land, who was a party to the original lien, was not consulted about these subsequent changes in the title, she being all the while in the use and enjoyment of the property as a homestead. This answer also set up that at the time the deed was executed by Moore to Edrington, it was the understanding between them and appellee that the same was but a security to Edrington, and also setting out that appellee executed to Edrington a lease for the property, speci-fying a certain rental per month, which was but a device to cover the usurious interest.

Appellee further specially answered to the effect: That from the transaction of 16th of February, 1876, down to· and including that by which plaintiff secured his deed from Moore, there had subsisted in himself and family, recognized by all parties, an equity and right to redeem the property upon the payment of the original debt and its incidents in the way of costs, interests, expenses, etc., and that this equity ran through every changing phase of the title, and that it was ratified and admitted by plaintiff when he advanced the money and got his deed, and insisting that the right to redeem was a necessary sequence from the facts.

Appellee and his wife also pleaded in reconvention for damages, actual and punitive, setting up facts to sustain the plea in each regard.

Plaintiff replied to these defenses by way of general demurrer and general denial. The cause was tried before a jury, September 9, 1878, and resulted in a general verdict for defendant, and for $300 actual and $100 vindictive damages, and judgment.

There was a motion for a new trial by plaintiff, which was over-ruled by the court, and notice of appeal given. The plaintiff below brought the cause up on appeal, assigning errors in the record upon the action of the court in overruling his demurrer to defendant's answers; the charge of the court as given to the jury; the refusal of the court to give instructions asked by him upon the admission of evidence, and in overruling the motion for new trial, and upon other grounds.

Amongst other evidence in the case the proof showed a deed of trust (and note) upon the property, February 16, 1876; transfer of

trust to H. A. Moore, and foreclosure and purchase by him, June 6, 1876; deed from Moore to Edrington, June 22, 1876, and lease of same date to defendant by Edrington for six months, and possession by defendant. Uniform and continued possession by Newland from a long while before these transactions down to sequestration by plaintiff. Newland testified that the tenancy was in fact to be a continuous one on conditions, and the deed to plaintiff executed with that understanding; that plaintiff never called upon him for any rent or the interest upon his money, and brought the suit without other notice. Newland's testimony as to the terms of the contract are stated briefly in the opinion; and also that he furnished Edrington $105.50 to pay Moore in the purchase made from the latter; and also that he paid $52.50 as interest, but in the shape of rent of the premises for six months. Edrington testified that he demanded possession of the property through his attorney, Taliaferro, before suit. Taliaferro swore that no demand was made through him. Edrington also swore that, being applied to by Newland for money to redeem the property from Moore with an offer to execute a lien for security, he refused the lien, but agreed to buy and take the deed in his own name, and permit Newland to remain in possession until an amount of the purchase money paid by Newland was paid by rents. Edrington also swore that of the consideration for the deed, $280, Newland paid $90, or less than $100, and Newland swore that he furnished $105.50, and Edrington $174.50. There was no other proof of notice to quit or demand for rents than above stated, and no question about the unbroken possession of Newland down to inception of suit. Edrington placed the value of the property at $600, and another witness at $300 to $500, "probably more."

The court charged the jury as follows:

1. "This being an action brought, not for the recovery of a judgment for money, but to try the titles to the lots in question, and for their recovery, the plaintiff must recover, if at all, upon the strength of his title to said lots read in evidence.

2. "The legal effect of the deeds read in evidence, from Newland and wife to Henderson, from Henderson to Moore, and from Moore to plaintiff, in the absence of other evidence changing the legal effect upon the face of them, would be to vest in plaintiff the title to the lots in suit and to enable him to recover in this suit, and you will therefore find in his favor, unless you find otherwise under charges following.

3. " If the evidence shows you that there was any contract be-

tween plaintiff and defendant by which the deed from Moore to plaintiff was procured to be executed, and as to whether said deed was to be taken by plaintiff as a security for money loaned defendant or not, then the rule of law is, that the understanding and agreement of the plaintiff and defendant, at the time the deed was executed, must determine the nature of the contract and the rights of the parties under said deed, and it is the duty of the jury, therefore, to consider and weigh all the evidence before them, and from it ascertain what the understanding and agreement, if any, was.

4. "If it is not shown by the evidence that it was the agreement between plaintiff and defendant, that the purchase money paid by plaintiff to Moore was advanced as a loan to defendant, then you will find for plaintiff.

5. "If, however, the jury believe, from the evidence, that the defendant furnished a portion of the purchase money to pay Moore for the lots, and that plaintiff furnished the balance as a loan to defendant, and the amounts so furnished were by plaintiff paid to Moore, and the deed taken to plaintiff with the understanding between plaintiff and defendant that defendant should pay to plaintiff the amount so furnished by him, together with interest or rent for the property until so paid, and that when so paid the plaintiff would convey the lots to defendant, then, although the deed purports on its face to convey the absolute title to plaintiff, it does not in law convey to him any right which will enable him to recover in this action, and you will find for defendant."

The plaintiff asked the court to give the following instructions, both of which were refused:

1st. "The jury are instructed that the legal effect of the deed from Moore to plaintiff was to vest the title to the land in controversy in plaintiff.

2d. "If the jury find, from the evidence, that it was the understanding between Newland and plaintiff, at the time of the execution of said deed, that plaintiff should advance the purchase money in whole or in part, and that the deed should be taken in the name of and delivered to plaintiff to be held as a security for the purchase money paid, and if you further find that defendant failed to pay back the purchase money so paid by plaintiff, then you will find for the plaintiff."

*Davis & Beall* and *Taliaferro,* for appellant.

I. The deed of trust from defendants to Henderson, and the conveyance from Henderson, as trustee, to Moore, divested all title,

legal and equitable, out of defendants and vested it in Moore, and the subsequent purchase of the property by plaintiff from Moore, his payment of the purchase money, and the conveyance from Moore to him, vested the legal title in plaintiff; and notwithstanding there may have been an agreement, at the time of the purchase, between plaintiff and defendant, that defendant should pay to plaintiff, for the property, the amount of the purchase money paid by him to Moore, with interest thereon, and when so paid that plaintiff would convey the property to defendant, yet, until such payment of the purchase money, the superior right to the property remained with plaintiff, and he could sue and recover the property of defendant, holding under a lease from him, upon default in the payment of such purchase money by defendant. Hendrick *v.* Cannon, 5 Tex., 249, 250; Roosevelt *v.* Davis, 49 Tex., 463, 473; Flanagan *v.* Cushman, 48 Tex., 244, 247; Peters *v.* Clements, 46 Tex., 123, 124; Dunlap *v.* Wright, 11 Tex., 597; Browning *v.* Estes, id., 237; Keys *v.* Mason, 44 Tex., 144; Monroe *v.* Buchanan, 27 Tex., 241; Gravin's Curator *v.* Lartet *et al.*, 15 La., 400; McGowan *et al. v.* McGowan *et al.*, 14 Gray, 120, 122.

II. Under the pleading and evidence in this case, no equitable trust resulted to defendants for the property in controversy, until they had fully repaid to plaintiff the amount of the purchase money advanced by him, with the interest agreed to be paid thereon. McGowan *et al. v.* McGowan *et al.*, 14 Gray, 120, 122; see note (Buck *v.* Mason), id., 122; White *v.* Carpenter, 2 Paige, 218, 238, 241; Sayer *v.* Townsend, 14 Wend., 647, 650; Freeman *v.* Kelly, 1 Hoffman, 90, 96; Evans' Estate, 2 Ashmead, 470, 482; Smith *v.* Burnham, 3 Sumn., 435, 463; Green *v.* Drummond, 31 Md., 71; Baker *v.* Vining, 30 Me., 121; Cutler *v.* Tuttle, 4 E. E. Green, 549.

*P. D. Page*, for appellee.

WALKER, P. J. COM. APP.— The question most prominent and important in this case is one of pleading and practice. It is not whether the plaintiff had rights under the facts of the case for the successful maintenance of which he might have sued and recovered upon appropriate allegations and a proper prayer for relief, but it is distinctly questioned by the defendants whether he is entitled upon such facts to recover in a suit brought in form of an action of trespass to try title, alleging ownership, right of possession, followed by the usual prayer for the recovery of possession of the premises. The district court determined that proposition in the negative, as is

manifest from the charge given to the jury, and the approval of the verdict of the jury.

The maxims announced in Hall *v.* Jackson, 3 Tex., 305, that facts, although proved, cannot form the basis of judgment unless alleged; that the pleadings must constitute a sufficient legal basis on which to predicate the judgment, constitute, as it were, a beginning corner, and a corner-stone of our system of pleading and procedure.

In Dennison *v.* League, 16 Tex., 399, the principle was pointedly and vigorously reasserted, the court declaring that there is no rule so stringently enforced as that the allegations must be broad enough to let in the proof, and no evidence not supported by the allegations can support the verdict. Evidence, although admitted without objection, which was not anticipated by proper allegations in the pleadings, should be disregarded. Paul *v.* Perez, 7 Tex., 338, 345. See 10 Tex., 220, 234; 11 Tex., 457.

It follows from the application of these rules of law to this case, that under the plaintiff's pleading, if he recovers from the defendant, that recovery must be one that conforms to the nature of his action and the prayer of his petition. If he recovers at all, he must show himself entitled, under all the evidence in the case, to a judgment for the possession of the land; failing in that, the defendants must recover. The plaintiff could not, in a word, obtain in this action, as the pleadings stand, a decree of foreclosure of a mortgage upon the land, or other like equitable remedy to adjust the relative rights of all parties in the subject matter of controversy; he must show a right to gain exclusive possession of the land as against the defendants, or else fail in the suit.

The defenses set up by the defendants were sustained by the verdict of the jury, and it is now a question of law as to whether the facts proved in support of the defendants' answers qualified or not the seeming absoluteness, *prima facie*, of the plaintiff's legal title, so as to interpose against it a valid ground to prevent the plaintiff from dispossessing the defendants.

The appellant Edrington and the appellee Newland, as witnesses, gave their respective versions of the facts which have induced this ligation, and most of the essential history of them as detailed by those parties is virtually the same, especially so in respect to the fact that Newland sought the appellant to procure from him, and did obtain the requisite loan, for the purpose, as mutually understood and agreed to, that Newland might be restored to his former homestead; and that the deed was taken by their mutual consent in the name of Edrington.

The testimony of Newland shows that he, Newland, was the purchaser of the premises as between himself and the plaintiff; that the latter held the legal title with the rights of a mortgagee; that he obtained and accepted the deed of conveyance from Moore, in pursuance of an agreement with Newland, which had the effect to establish the relation of mortgagor and mortgagee as to the property, in order to secure the payment of the loan. That under the terms of the contract Newland should have an indefinite time within which to pay the principal, so long as he paid interest thereon in the guise of rent, provided for in a formal instrument of lease.

Further, it was stipulated " that when convenient for defendant, he could return to the plaintiff the amount of money so furnished by plaintiff to defendant, and then plaintiff would convey the property in controversy to defendant." This contract fairly recognized the loan, and the consequent debt therefor, together with the mode and periods for its payment, as well as the security for the ultimate satisfaction of the debt. Surely the plaintiff was entitled to enforce the collection of the debt according to the conditions and stipulations which were provided between the parties; and it is the sequence to that proposition, that he could not at the same time claim the ownership of the land, as well as to be the creditor of Newland for the purchase money which went to invest him, Edrington, with the apparent title; he cannot have both the land and the money.

Edrington, however, disclaims and disavows any claim as creditor, but claims the land alone. The evidence of Newland, which we must now assume to be true after the finding of the jury, will not allow of a view different from that of his being the lender of the purchase money, and he must be deemed the creditor of Newland.

Under this view, the plaintiff cannot recover in this action; the mortgagee is not entitled to the possession of the land mortgaged, and his remedy is, of course, to foreclose, and not in form of an action of trespass to try title. See Parker v. Beaver, 19 Tex., 410; Duty v. Graham, 12 Tex., 427; Hannay v. Thompson, 14 Tex., 144–5; McKey v. Welch, 22 Tex., 390; Mann v. Falcon, 25 Tex., 274–6.

These cases embrace several of the legal propositions which have been under discussion and involved herein.

The view taken by us of the leading questions in the case renders it unnecessary to reply to several of the assignments of error.

In respect to the grounds of error relied on as to the verdict for damages, we think that the same is supported under the pleading

and evidence, and that there is no error for which the judgment ought to be reversed.

The judgment ought to have been rendered solely for the defendant H. S. Newland, and not jointly for him and his wife, notwithstanding she joined in the suit claiming damages in the supplemental petition in which she and her husband reconvened. The joinder of Mrs. Newland in the special answer above indicated in no wise adds to the legal right of her husband to recover in respect to the facts and matters therein alleged, and that answer does not set forth any special ground of action in behalf of her separate property or personal rights which would render it essential or proper that she should become a party defendant in this action. The damages claimed in the answer of Mrs. Newland and her husband are alleged to be such as were the consequence of the plaintiff's illegal dispossession by sequestration in this suit of the defendant H. S. Newland and his family. He, then, as the marital head of the community, was plainly the only necessary or proper party to sue for and recover damages for such injuries. See Cannon v. Hemphill, 7 Tex., 184.

We will add, before concluding this opinion, that the claim set up under the plaintiff's deed under his evidence, to rebut and repel the idea that the transaction was a mortgage, and maintaining that his deed did constitute an absolute, valid title without conditions, rests upon his statement that the contract between the plaintiff and defendant was to the effect that Newland had no other interest in the premises than such as he acquired as a tenant. That Newland, under the agreement, was entitled to remain and occupy the premises until the value of the rent should satisfy and discharge the amount of money which Newland had advanced in the purchase made by plaintiff from Moore. Newland had advanced about $100, or perhaps $105, besides which, he paid to plaintiff at the time of the transaction six months' rent, $52.50. Assuming these to be the true facts, the testimony does not show what was the value of the rents of the premises further than was agreed upon for the first six months. The plaintiff, to be entitled to evict and dispossess the defendant under these circumstances, must have proved that the defendant, at the date of the institution of this suit, was in default in refusing to deliver possession under a wrongful holding over, after having occupied the premises beyond the period of time which he had paid for under the terms of the contract, as the same was construed and detailed by the plaintiff. The suit was brought about one year and a half after the making the transaction which is

the subject of this suit; Newland had paid to Edrington, say $150, more or less. It is not shown that the rent up to the date of suit (December 13, 1877) was or was not fully paid, and, unless it was so shown, the plaintiff could not maintain this action, he not being entitled thereto until the money paid to him by Newland had been absorbed by the occupation of the premises.

There is, therefore, no view which can be taken — even that most favorable to the plaintiff,— according to the evidence of any of the witnesses, which could have warranted a verdict for the plaintiff.

We conclude that the judgment ought to be affirmed, and reformed in the form thereof as has been indicated herein.

AFFIRMED AND REFORMED.

[Opinion delivered October 31, 1882.]