### ALBERT SMITH v. WILLIAM ANDERSON.
#### No. 403.

1.    **Practice on Appeal—Findings of Fact.**—Findings of fact by the trial court, where there is evidence to support them, or in the absence of a statement of facts, will not be disturbed on appeal.

2.    **Pledge of Corporate Stock—Intention of Parties.**—The character of the transaction between the parties is to be determined by their intention, and it matters not what language was used, or what the form of the transfer was, if it was intended to secure the payment of money, it must be construed as a pledge.

3.    **Same—Equitable Action to Redeem.**—Where corporate stock is pledged, and the shares transferred on the books to the pledgee, a bill in equity lies to redeem the stock upon refusal of the pledgee to retransfer it.

4.    **Same—Judgment Should Require Repayment.**—In an action in equity to redeem a pledge, payment of the amount for which the pledge was given should be directed before the return of the pledge is ordered.

APPEAL from Webb.    Tried below before Hon. A. L. McLANE.

*Nicholson, Dodd & Mullally* and *F. B. Earnest,* for appellant.—1.    If the money paid by Smith was not by way of a loan, and Anderson had the privilege of refunding it if he pleased within a given time, which would have entitled him to a reconveyance of the shares of stock, it was a conditional sale.    De Bruhl v. Maas, 54 Texas, 472;

Alstin v. Cundiff, 52 Texas, 461, 462; Hudson v. Wilkinson, 45 Texas, 452; Ruffer v. Womack, 30 Texas, 332.

2. The court erred in its judgment entitling plaintiff to recover the stock without requiring him to pay the $500 and interest.

3. In decreeing a return of the sixty-eight shares by appellant, the court should have provided by the decree the time within which appellee should pay to appellant the $500, together with interest thereon. Kalklosh v. Haney, 23 S. W. Rep., 420.

4. Specific performance of a contract respecting personal property will not be enforced in equity, unless an adequate remedy at law can not be had. Taylor v. Gillean, 23 Texas, 517; Eckstein v. Downing, 10 Am. St. Rep., 404–409; Foll's appeal, 36 Am. Rep., 671–674; Cowles v. Whitman, 25 Am. Dec., 60–63; 22 Am. and Eng. Encyc. of Law, 989, 991–994; 2 Pom. Eq. Jur., secs. 1402, 1403.

*E. A. Atlee*, for appellee.—1. The petition is not insufficient on the ground urged, viz., that appellee should have asked relief in the alternative for the value of the property in controversy. If the facts alleged in the petition are true, then the relief prayed for should be granted. Rev. Stats., arts. 1122, 1187, 1195; Trammel v. Watson, 25 Texas Supp., 210; Voigtlander v. Brotze, 59 Texas, 286; Hardy v. De Leon, 5 Texas, 246, 247; Hipp v. Huchett, 4 Texas, 20.

2. The statement made by appellee to Denike, to the effect that he had sold the shares of stock to appellant, reserving the right to redeem the same in thirty days, does not in itself evidence a conditional sale, and would not do so if put in writing and signed by appellee; but if it could be construed as a conditional sale, yet the character of the transaction was to be ascertained by the court from all the attendant facts and circumstances, and the question to be determined was one of fact and not of law. Alstin v. Cundiff, 52 Texas, 453; Calhoun v. Lumpkin, 60 Texas, 185; Hubby v. Harris, 68 Texas, 91; Harvey v. Edens, 69 Texas, 420; Miller v. Ytrurria, 69 Texas, 549; Thompson v. Chumney, 8 Texas, 389.

3. The court found from the evidence that the shares of stock about which the controversy arose were pledged to appellant; such being the transaction between the parties, the title to said shares remained in appellee, and could not be divested without a sale thereof after notice to appellee. Lucketts v. Townsend, 3 Texas, 119; Jones v. Thurmond, 5 Texas, 318; King v. Ins. Co., 58 Texas, 669; 18 Am. and Eng. Encyc. of Law, 667, 668, 710, 720.

NEILL, ASSOCIATE JUSTICE.—Appellee, the plaintiff below, brought this suit against the appellant, defendant below, and A. C. Smith, J. H. Johnston, W. T. Miller, C. E. Bonnell, and Arthur D. F. Randolph, alleging in substance, that on July 17, 1893, he was the owner of 265 shares of capital stock in the Minera Colliery Company, a corporation organized under the laws of Texas, of which appellee was president

and G. B. Broadwater secretary. That on said day appellant returned and had cancelled on the books of said company sixty-eight shares of his stock, and in lieu thereof had a certificate issued in the name of appellant for sixty-eight shares of said capital stock, the certificate therefor being duly signed by himself as president, and by Broadwater as secretary of said company. That the stock so issued was pledged by appellee to appellant as security for the payment of $500 on that day loaned by appellant to appellee, and that it was mutually understood and agreed by them that appellant was to return to appellee the sixty-eight shares of stock when requested, upon appellee's paying him the $500, with interest, within a reasonable time. That on September 16, 1893, appellee tendered to appellant said sum of money, with legal interest, and requested of him the return of said sixty-eight shares of stock, and that appellant refused to accept said money and to return said shares, but fraudulently converted them to his own use.

Appellee also alleged, in effect, that the appellant had fraudulently transferred to the other parties named as defendants, portions of said shares as well as other shares of the capital stock of said company. An injunction was prayed for restraining appellant from disposing of his shares of stock in said company, and the other defendants from transferring or disposing of the stock pledged by appellee to appellant, and to prohibit the defendants from voting said sixty-eight shares. The appellee in his petition tendered in court the $500 and interest alleged to have been borrowed on the security of the sixty-eight shares of stock from the appellant, and prayed for a decree annulling the transfer of said shares and reinvesting the title to them in appellee, and for such further relief as in law or equity he might be entitled to, etc.

A temporary injunction was granted as prayed for.

The appellant and his codefendants filed a general and special demurrer, and answered fully all the material allegations in the petition, in which they alleged, in substance, that the transaction of July 17th was a conditional sale, whereby appellant purchased from appellee sixty-eight shares of capital stock for the sum of $500, and agreed to resell the shares to appellee for $500 and interest, at any time within thirty days after the sale; that appellee failed to exercise his right to repurchase within the time specified, had thereby forfeited such right, and that the shares were appellant's property. Appellant's codefendants disclaimed any interest in the stock.

The general demurrer was overruled, and the special exception, which did not affect the material allegations in appellee's petition, was sustained.

Upon motion of appellant, the injunction was dissolved, except in so far as it restrained the defendants from selling, disposing of, or transferring the sixty-eight shares of stock during the pendency of the suit. The order of dissolution contained the further order, viz: "And

as per agreement of counsel, it is further ordered, that defendants deposit with the clerk of this court sixty-eight shares of said stock, the same there to remain to abide the decision of the court."

The case was tried without a jury, and judgment, with the necessary orders for its enforcement, was rendered in favor of appellee against appellant, for the recovery of sixty-eight shares of the capital stock of the Minera Colliery Company. The judgment was in favor of the other defendants.

There is no statement of facts in the record, the trial court having, at appellant's request, filed as its conclusion of facts the following, viz:

"1. I find as a fact that plaintiff and defendant Smith were, on the 17th day of July, 1893, the sole owners of the Minera Colliery Company, the plaintiff owning 265 shares and the defendant Smith owning 133 shares, the remaining two shares being held by others to qualify them as directors of the company.

"2. On said date the plaintiff received from defendant Smith $500, and at the same time delivered and caused to be transferred on the books of the company, in the name of Smith, sixty-eight shares of his (plaintiff's) stock in the company, the plaintiff testifying in his own behalf, that he received said $500 as a loan to be repaid on demand, and that the transfer of the sixty-eight shares on the books of the company and the delivery of the certificate for said shares to the defendant was to secure the repayment of said loan; the defendant testifying in his own behalf, that the $500 received by plaintiff was the purchase price of said sixty-eight shares of stock, with the understanding that plaintiff should have the right to buy back said stock within thirty days, upon payment of $500 and legal interest thereon.

"3. I find that defendant asked plaintiff to have the terms of their agreement reduced to writing, and that plaintiff declined to do so for fear of missing the train then about to leave Laredo, but called in Ed. Denike as a witness, and said to him in presence of Smith: 'I have sold to Smith sixty-eight shares of the Minera Colliery Company's stock for $500, with the right to redeem the same in thirty days. You can say to all interested that Smith is the owner of a majority of the stock, and has full control of the company.'

"4. I find that on said day the said sixty-eight shares of stock was of the value of $2720, or $40 per share.

"5. I find that about the 23rd day of July, 1893, Cogley, being interested in the operation of the company's coal mines, asked the defendant why he did not work the mines, now that he was in full control, and that defendant answered, 'Yes, I am now; but Anderson (plaintiff) may return any day and take back his stock.' That defendant had advanced Anderson (plaintiff) $500, and created the impression on Cogley from what was said that the defendant held the stock as security for a loan of $500.

"6. I find that Galbraith, about July 20, 1893, negotiated with defendant Smith for the purchase of 133 shares of the stock of the Minera

Colliery Company, and investigated to ascertain who were the stock-holders of said company, and was told by Smith that Anderson was the owner of 265 shares and defendant Smith the owner of 133 shares; and was also informed by defendant that he had advanced to plaintiff Anderson $500, for which he held as security sixty-eight shares of the stock; and from what Smith said, Galbraith believed that Smith held the stock as collateral.

"7. I find that on the 31st day of July, 1893, the defendant, in his bill for the appointment of a receiver of the colliery company, made affidavit that he (defendant) was the owner of 133 shares, and plaintiff Anderson the owner of 265 shares of the stock of said colliery company.

"8. I find that all of the stock of said company is still owned by plaintiff and defendant Smith, and that the other defendants named in plaintiff's petition have no interest in the subject matter of this suit.

"9. I find that on the 6th day of September, 1893, the plaintiff tendered to the defendant Smith $500, with 8 per cent interest thereon from July 17, 1893."

It will be seen that the third, fifth, sixth, and seventh findings are statements of the evidence rather than the conclusions which should be drawn from it.

The trial court as its conclusion of law found: "That the true intent and meaning of the contract between the plaintiff and defendant was to create the relation of debtor and creditor; that the $500 was paid to and received by the plaintiff as a loan, and the delivery and transfer of the sixty-eight shares of stock was intended as a pledge to secure defendant, and that said contract was not intended as a conditional sale of sixty-eight shares of said stock, and that plaintiff is entitled to judgment for the recovery thereof." All these conclusions except the last are conclusions of fact, from which, together with the other conclusions of fact, follow as a proper conclusion of law, "that the plaintiff is entitled to judgment." The blending by the trial court of these conclusions of fact with its conclusion of law is not complained of by the appellant, and we adopt them, together with all those denominated by the trial court "conclusions of fact," except those which are merely statements of evidence, as our conclusions.

*Opinion.*—It is urged by the appellant that the court erred in its conclusion, wherein it found that the true intent and meaning of the contract between plaintiff and defendant was to create the relation of debtor and creditor, and that $500 was paid to and received by plaintiff as a loan, etc., because such finding is inconsistent with the court's third finding of fact. According to our analysis of the court's conclusions, its third finding is simply a statement of testimony, and when it is so considered it can only be said to be inconsistent with other facts and evidence which are perfectly consistent with and are sufficient to sustain the findings complained of. It was the duty of the trial court to pass upon the credibility of the witnesses, weigh the evidence, de-

termine its value, and conclude what facts were established by it; and when it has done so, such conclusions, if there is evidence to support them, or in the absence of a statement of facts, will not be disturbed by this court.    Moore v. Rogers, 84 Texas, 1.    The character of the transaction between the parties is to be determined by their intention; and it matters not what language was used or what the form of the transfer was, if it was intended to secure the payment of money, it must be construed as a pledge.    Nor is it necessary that the consideration be a preexisting indebtedness; it is sufficient if it be a present advancement. Gray v. Shelby, 83 Texas, 409; Alstin v. Cundiff, 52 Texas, 462; Ruffier v. Womack, 30 Texas, 339; Loving v. Milliken, 59 Texas, 423; Gibbs v. Penny, 43 Texas, 560; Hart v. Eppstein, 71 Texas, 752.

From the findings of the trial court the conclusion follows, that the transfer of the stock to appellant was a pledge, and that appellee, having tendered the money it was pledged to secure, is entitled to recover said stock.

The action of the court in overruling appellant's general demurrer is complained of as error.    It will be observed from the allegations in the plaintiff's petition, that his suit is to recover certain shares of stock in a corporation which he pledged to the appellant, and which have been transferred on the books of the company and certificates in lieu of them issued in the name of the pledgee and his codefendants, so that they have the legal title.    Generally a bill in equity to redeem property from a pledge does not lie, because upon a tender of the money which the pledge was given to secure, the pledgor has his action at law, it being either a possessory action to recover the thing pledged, or an action to recover its value.    Jones on Pledges, sec. 556.    But "when the property pledged is stock in a corporation, and the shares have been transferred upon the books of the company to the name of the pledgee, so that he has the legal title, equity alone can restore possession of the shares to the pledgor, by an order for redelivery." Jones on Pledges, sec. 558.    "The pledgor may, if he prefers, begin suit in equity when the pledgee has converted the stock, and compel him either to replace the stock or give compensation in damages.    The jurisdiction of a court of equity in such a case has been denied, but it has been sustained on the ground that only a court of equity can compel a *retransfer* of the stock, or an accounting of dividends declared while the pledge was running, or an accounting by third persons to whom the pledgee has assigned the debt and pledge, or enjoin an illegal transfer of the stock."    Cook on Stock and Stockholders, 3 ed., sec. 475.    Hence the contention of appellant, that appellee's remedy was strictly a legal one to recover damages for a conversion of the stock, and that he had none at equity, can not be maintained.    Even at law a pledgor is not restricted to his right to recover damages for conversion, but can recover the specific property pledged.    In this particular case, however, it was necessary to invoke the equitable powers of the court to compel a retransfer of the stock and to restrain

an illegal transfer. The principle, that specific performance of a contract respecting personal property will not ordinarily be enforced in equity, has no application to this cause, for it is not a case of that kind. The remedy pursued by the appellee was authorized, and the general demurrer to his petition was properly overruled.

The appellee having by his pleadings tendered payment of the money and interest, as equity required he should before he could recover the stock pledged for its payment, the court below should, by its judgment, have directed such payment before requiring the appellant to deliver up the pledged stock. We need not say whether this would be required in strictly a legal proceeding to recover a pledge upon refusal of the pledgor to deliver it after the tender of the sum 'for which it was pledged, but where, as in this case, equity is sought, it must be done.

Therefore the judgment of the court will be so reformed as to require the appellee to pay into the District Court for the appellant $500, with legal interest thereon from the 17th day of July to the 6th day of September, 1893, within thirty days from the date of filing the mandate from this court in the District Court of Webb County.

The judgment of the court below as thus modified is affirmed.

*Reformed and affirmed.*

Delivered September 12, 1894.