## HUME v. LE COMPTE et al. †

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1911. On Motion for Rehearing, Jan. 17, 1912.)

1. MORTGAGES (§ 32*)—REQUISITES—ABSOLUTE DEED AS MORTGAGE—INTENTION OF PARTIES.

The intention of parties to an instrument will determine its character, so that where a deed, though absolute on its face, was intended as security for a debt, upon payment of which the land was to be reconveyed, it is a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60–66, 84–94; Dec. Dig. § 32.*]

2. MORTGAGES (§ 6*) — REQUISITES—CONDITIONAL SALE OR MORTGAGE—EQUITY.

Where there is a question as to whether an instrument given to secure a debt is a mortgage or a conditional sale, equity will construe the instrument as a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 5; Dec. Dig. § 6.*]

3. PAYMENT (§ 66*)—PRESUMPTIONS—LAPSE OF TIME.

In an action to try title to land, the presumption that a debt secured by a mortgage was paid, and the mortgage thereby satisfied, will arise from its existence for a long time before suit.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 176–188; Dec. Dig. § 66.*]

4. MORTGAGES (§ 214*)—RIGHTS OF PARTIES—POSSESSION.

A mortgage is merely security for a debt, and conveys neither the title nor the possessory right of the mortgagor to the mortgagee, so as to enable him to sue for the recovery of the property, even as against a trespasser, so that he has no right to bring an action of trespass to try title.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 492–496; Dec. Dig. § 214.*]

5. MORTGAGES (§ 32*)—RIGHTS OF PARTIES—MORTGAGE IN FORM OF DEED.

While a party may be estopped to assert, as against an innocent purchaser, that a deed absolute in form was a mortgage, where no such rights intervene, the rights of the parties are the same as though the mortgage were in the ordinary and regular form.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60–66; 84–94; Dec. Dig. § 32.*]

### ON MOTION FOR REHEARING.

6. MORTGAGES (§ 32*)—RIGHTS OF PARTIES—MORTGAGE IN FORM OF DEED.

The assessment and payment of taxes by one holding under an absolute deed given to secure a debt will not change the mortgage into a deed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60–66, 84–94; Dec. Dig. 32.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by George L. Hume, for whom, after his death, Winifred Hume, his executrix, was substituted, against Leon Le Compte and others. From a judgment for defendants plaintiff appeals. Affirmed.

Swearingen & Tayloe, for appellant. Clark & Bliss, for appellees.

FLY, J. George L. Hume instituted a suit to try title to 14.6 acres of land in Bexar county, being survey 53, surveyed by virtue of I. & G. N. certificate No. 23/80, against Leon Le Compte, Octavia Le Compte, and William Cassin. Afterwards, a motion to substitute Winifred Hume as plaintiff was made, in which it was alleged that George L. Hume had died leaving a will in which appellant had been appointed sole and independent executrix, without bond, and that the will had been duly probated, and she had qualified as executrix, and the court permitted the substitution. Cassin filed a disclaimer, alleging that since filing his original answer he had conveyed all of his interest in the land to Octavia Le Compte. The Le Comptes pleaded not guilty and five and ten years limitation. Appellant claimed the land through an instrument executed to George L. Hume on November 18, 1898, by Elizabeth Maddox. The cause was tried by the court without a jury and judgment rendered for appellees.

The land in controversy was patented to R. M. Thomson by the state of Texas, on March 11, 1879, and was conveyed by him to Elizabeth Maddox, then a minor and the deed was acknowledged by him on September 26, 1879. Frank Maddox was the guardian of the estate of Elizabeth Maddox. She executed the instrument to George L. Hume through which appellant claims, on November 18, 1898, after she was 21 years of age. The instrument was in form a deed, but it was testified by F. M. Maddox, the father of Elizabeth Maddox, that he desired to borrow money from George L. Hume, and he executed a note and got his daughter to convey the land to Hume; the understanding being that if F. M. Maddox paid the note the land should be reconveyed to Elizabeth Maddox. That testimony was not contradicted. Appellees claimed that the land in controversy was a part of the R. T. Higginbotham survey, and the finding of the court that the land is included within the boundaries of the Higginbotham survey, which was located in 1838, long prior to the location of the survey under which appellant claims, is supported by the evidence, as is the finding that the northeast and southeast corners of the Higginbotham survey are now, and have since the location been, well known and established. The land was fenced in 1887 by Le Compte and has, with some breaks, been in his possession all the time since. Neither Thomson, Elizabeth Maddox, George L. Hume, or appellant ever at any time was in possession of the land in controversy.

[1] If, as testified by F. M. Maddox, it

was the intention of the parties that the deed absolute on its face should be security for a debt, upon payment of which the land was to be reconveyed, the instrument was a mortgage. The character of the instrument must be determined by the intention of the parties. Stamper v. Johnson, 3 Tex. 1; Carter v. Carter, 5 Tex. 93; Fowler v. Stoneum, 11 Tex. 478, 62 Am. Dec. 490; Gibbs v. Penny, 43 Tex. 560; Loving v. Milliken, 59 Tex. 423; Brooks v. Young, 60 Tex. 32. That the instrument was given to secure a debt can be proved by parol testimony is held in all the cases cited.

[2] In this case there was no time designated at which the debt should be paid, and one of the essentials of a conditional sale was wanting, and the acts of the parties and the circumstances do not tend to show that the parties regarded it a sale. Miss Maddox was not interrogated, and of course there is no one but herself could tell how she regarded the transaction, and Hume was dead. It appeared, however, that he made no claim to the land until this suit was instituted; that he did not enter into possession, nor is it shown that he paid taxes on it. The instrument was evidently intended as security for a debt, and as between a mortgage and a conditional sale equity will construe the instrument as a mortgage. Walker v. McDonald, 49 Tex. 458; Gray v. Shelby, 83 Tex. 405, 18 S. W. 809; Smith v. Anderson, 8 Tex. Civ. App. 188, 27 S. W. 775.

[3] There was a debt, and there was no direct evidence that it was ever paid; but the long lapse of time and other circumstances would create the presumption that the debt had been paid by the owner of the land, and, when paid, of course the mortgage was satisfied. De Bruhl v. Maas, 54 Tex. 464.

[4, 5] Appellant seems to labor under the view that appellees set up an equitable outstanding title, but by appellant's witness it was shown that the instrument, which on its face was a deed, was in truth and fact a mortgage, and being a mortgage, it was only security for a debt, and the title to the property remained in Elizabeth Maddox, as well as the right of possession. Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284; Erwin v. Blanks, 60 Tex. 583; Pratt v. Godwin, 61 Tex. 331; Wilkins v. Bryarly, 46 S. W. 266.

No doubt can arise, under the various decisions of this state, that a mortgagee cannot sustain an action of trespass to try title based on his mortgage, because neither the title to the land nor the right of possession is in him, and as every instrument, no matter what its form may be, that is given as security for a debt, is a mortgage, an instrument, in form a deed, but executed with a contemporaneous agreement that it was merely made to secure a debt, would be a mortgage, and when that fact is developed the party claiming under such deed must fail. While prima facie a deed, when the mask is torn from it and it becomes merely a security for debt, it has no more force, and can form no safer basis for the recovery of land than if in manner and form a mortgage. If in the form of a deed, an innocent purchaser might be protected from proof of its being a mortgage on the ground that estoppel as to the maker of the instrument would prevent any one from setting it up; still, where no such rights are involved, any one can set up the defense, because, being in truth a mortgage, the legal title was still in the owner of the land.

Appellant, being a mortgagee, had no possessory right to the land, and without such right she had no foundation for a recovery of the land. It is true that in most, if not all, of the Texas cases in which it has been held that a party cannot recover on a deed shown to be a mortgage, the suits have been between the mortgagor and mortgagee, or parties holding under them; but we can see no reason why it cannot, under the Texas theory that a mortgage does not pass the legal title or the right of possession, be used as a weapon of defense even by a trespasser, for the burden is on the plaintiff to show that he has been ousted of his possession, or that he has the legal title to the land and has a possessory right. We fail to see the distinction between a deed which is in fact a mortgage, when stripped of its cloak, and the instrument which is a mortgage on its face, and, if the latter cannot form the basis for a recovery in an action of trespass to try title, the former cannot either. As said in Gray v. Shelby, 83 Tex. 405, 18 S. W. 809: "It matters not what the language used or the form imparted to the instrument; if it was intended to secure the payment of money, it must be construed as a mortgage." In the case of McKeen v. James, adverted to herein, Chief Justice Gaines, while not agreeing with it, in effect states that the rule in this state is that the legal title is not conveyed by a deed, absolute on its face, which is shown to be a mortgage; but he states a contrary personal opinion, although constrained to follow a rule that has become a rule of property. He says: "It seems to me that, when an absolute conveyance of land is made for the purpose of securing a debt merely, the grantee takes the legal title subject to the equitable title of the grantor to recover the land upon payment of the debt. Such being the rights of the parties, whatever the form of the action, in my opinion, the grantor should not receive the aid of a court of equity except upon condition that he do equity; that is, that he pay the debt, whether barred by limitation or not. An examination of the authorities satisfies me that this is the rule in every state of the Union, except in this state and one other." The rule in this state is based on the proposition that a mortgage, no matter what its form, is merely security for the debt and does not convey the title nor the possessory right to the mortgaged property, and without

such possessory right an action of trespass to try title cannot be maintained.

In the case of Keller v. Kirby, 34 Tex. Civ. App. 404, 79 S. W. 82, it was held by this court that an instrument in writing in the form of a deed, though in fact a mortgage to secure a loan of money, does not convey the legal title to the mortgagee, but it remains in the mortgagor. In support of the decision this court cited Devlin on Deeds, c. 31, and Howe v. Carpenter, 49 Wis. 697, 6 N. W. 357. In the Wisconsin case it was said: "Under repeated decisions of this court, and especially the decision of Brinkham v. Jones, 44 Wis. 498, it is held that the legal title to real estate does not pass to the mortgagee, no matter what the nature of the conveyance may be, which is given to him as security for his loan, and that when the evidence, either written or parol, establishes the fact that the relation of mortgagor and mortgagee exists between the parties, then the legal title to real estate remains in the mortgagor, and such title can only be divested by foreclosure and sale, or some subsequent conveyance founded upon a sufficient consideration, and sufficient in law to transfer the title to realty from the mortgagor to the mortgagee." As said in Keller v. Kirby: "The doctrine stated must be the law in every state where the rule prevails that a mortgage does not pass the legal title from the mortagor to the mortgagee." The case of Keller v. Kirby is cited with approval by the Court of Civil Appeals of the Second District in Ullman v. Devereux, 46 Tex. Civ. App. 459, 102 S. W. 1163.

Such being the state of case, appellant cannot recover in this action, because the mortgagee, not being entitled to possession of the land, has no remedy but that of foreclosure, and cannot sustain an action of trespass to try title. Duty v. Graham, 12 Tex. 427, 62 Am. Dec. 534; Mann v. Falcon, 25 Tex. 271; Silliman v. Gammage, 55 Tex. 365; Edrington v. Newland, 57 Tex. 627.

In the case of Mann v. Falcon, before cited, it was held that a deed absolute on its face may be shown to be a mortgage by parol evidence of the intention of the parties under a plea of not guilty, and that doctrine was approved in a number of cases. In the case of McKeen v. James, 87 Tex. 193, 25 S. W. 408, 27 S. W. 59, that rule was followed, although done merely as a rule of property that has become binding on the courts of the state.

Appellant having failed to show that she was entitled to any land, we might forego any discussion of any other point presented in the brief. However, the evidence is sufficient to sustain the finding of the judge that the land sued for "is included within the boundaries of the R. T. Higginbotham survey which was located in 1838, long prior to the location of the survey under which plaintiff claims." There was sufficient evidence to sustain the finding independent of the Merrick field notes to which objection was urged.

The judgment is affirmed.

## On Motion for Rehearing.

The motion for rehearing consists almost entirely of attacks upon the conclusions of fact of this court. They are amply sustained by the statement of facts. We notice a few of them.

It is contended that F. M. Maddox did not borrow the money, which is directly in the face of the record. F. M. Maddox testified: "The consideration of the deed from Elizabeth Maddox to G. L. Hume was this: My brother was in Washington. He telegraphed me for some money. I didn't have the money. I had to raise it, and I got my daughter to convey that property to Mr. Geo. L. Hume to secure him for indorsing my note, and he afterwards paid the note. That was the consideration. The cash was sent to my brother. She did not mortgage it to secure any one. She conveyed it to get money for her uncle, and conveyed it at my request. Mr. Hume paid the note of $300. That was the only consideration Geo. L. Hume ever paid my daughter for the land." If F. M. Maddox did not borrow the money, but made a sale of his daughter's land to Hume, he certainly would not have signed a note and had it indorsed by Hume and then raised money on it. The evidence was positive that F. M. Maddox borrowed the money for his brother, and that the debt incurred was secured by a deed executed by his daughter. The following questions were propounded to Maddox and answers given as indicated: "Q. You and Mr. Hume signed the note? A. Yes, sir. Q. And the paper was executed by your daughter at your request, to secure that loan? A. Yes, sir; and he paid the note afterwards." In the face of that uncontroverted testimony and the further statement of the witness that "the understanding was, of course, if I paid the note then they would convey back the property," it is gravely contended that this court "erred in its statement that the father of Elizabeth Maddox desired to borrow money from Geo. L. Hume, and he executed a note, because the evidence shows that F. M. Maddox, the father of Elizabeth Maddox, did not borrow any money from Geo. L. Hume." Whether the money was obtained directly from Hume, or, through his indorsement of the note, from a bank, the fact remains that Maddox borrowed $300, and the mortgage, in form a deed, was executed by the daughter of Maddox to Hume to secure payment of the borrowed money.

[6] This court did not err in concluding that there was not one word of testimony tending to show that Hume ever asserted any ownership in the land. It is true that the land was assessed against him, but it does not appear that it was assessed by him, and

in the report from the collector's office as to the payment of taxes there is nothing to indicate that Hume paid the taxes. The taxes may have been paid by Le Compte or other claimants. If Hume did assess the land, however, and pay taxes on it, those acts did not change the mortgage into a deed.

The motion for rehearing is overruled.