ZAMORA et al. v. VELA et ux. (No. 6004.)

(Court of Civil Appeals of Texas. San Antonio. March 27, 1918.)

1. MORTGAGES ⬤⟶38(1)—WARRANTY DEED TO SECURE DEBT—CONDITIONAL SALE.

Evidence *held* to show that a warranty deed was a mortgage and not a conditional sale.

2. NEW TRIAL ⬤⟶99 — NEWLY DISCOVERED EVIDENCE.

Newly discovered cumulative evidence which is probably not true and which would not change the result is not ground for new trial.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by Nicolas Vela and another against Juan Vela Zamora and another to cancel deeds. Judgment for plaintiffs, and defendants appeal. Affirmed.

Mann & Henry, of Laredo, for appellants. Greer & Hamilton, of Laredo, for appellees.

FLY, C. J. This is a suit instituted by appellees against Juan Vela Zamora and Antonio Rodriguez to cancel two certain deeds, one from appellees to Juan Vela Zamora, and the other by the last named to Antonio Rodriguez, thereby removing a cloud cast by the deeds on the title to lots 3 and 4, in block 234, in the eastern division of the city of Laredo, Tex. It was alleged in the petition that appellees bought lots 3, 4, and 5 in said block in Laredo from George W. Sprague, paying $75 in cash, and executing three notes for $50 each payable to the order of Sprague, a vendor's lien being reserved on the land to secure the deferred payments; that appellees took immediate possession of the lots, fenced them, and constructed a residence on lot 5, and moved into it and made it their home; that when all the notes were due the holder thereof desired payment of them and began to press appellees for the amount due; and that Nicolas Vela went to his cousin, Juan Vela Zamora, and arranged with him that enough money, about $114, be loaned to appellees to discharge the indebtedness on the land, the amount to be secured by the execution of a warranty deed to lots 3 and 4, "with the understanding then and there had between the parties that the plaintiffs were to have the right to pay off and discharge the said sum so loaned to them by the said defendant Zamora, and thereupon to require and demand from him a reconveyance back to them of the aforesaid two lots. They allege it was mutually understood and agreed between the parties that whilst said deed from them to the said Zamora was in form and on its face an absolute deed, yet in truth and in fact the same was only a mortgage and not in truth an absolute conveyance." It was further alleged that in January, 1917, appellees found a purchaser who was willing to pay them $200 in cash for the two lots, "out of which they intended to pay off and discharge the debt so incurred to the said Juan Vela Zamora, the rest being a matter of profit to themselves." It was alleged that Zamora refused to recognize any right of appellees in and to the lots, but claimed ownership in himself, and he executed a deed to Antonio Rodriguez to the lots. Appellants claimed the deed was absolute and never intended as a mortgage, and Rodriguez claimed to be an innocent purchaser of the land. The cause was tried without a jury, and judgment was rendered in favor of ap-

pellees as prayed for by them, and it was recited in the judgment that $124.48 had been deposited in the court for Zamora by appellees.

The statement of facts shows that on February 28, 1914, Sprague conveyed lots 3, 4, and 5, in block 234, eastern division of the city of Laredo, to appellees, the consideration being $75 cash and three promissory notes for $50 each, due respectively in October, 1914, June 26, 1915, and February 26, 1916. On November 16, 1915, appellees executed a warranty deed to Juan Vela Zamora conveying to him lots 3 and 4 aforesaid. The deed was duly recorded. On January 19, 1917, Zamora conveyed the lots to Antonio Rodriguez. Zamora paid the amount due on the vendor's lien notes.

[1] Nicolas Vela testified that Zamora, when the deed by him and his wife was executed, said:

"When you sell your property you will pay me my money and I will return you your deed."

According to the testimony of Vela, Rodriguez was told by him before he bought from Zamora that the deed was merely a mortgage. On cross-examination Vela swore that Zamora said:

"For this money you need not hurry about it, whenever you sell your property you pay me my money and I will return your property to you."

The wife of Vela testified that her husband told Rodriguez that he could not sell the lots because Zamora claimed them, and told Rodriguez that if Zamora sold the lots to him he would see what he could do to defend his property. Her understanding about the trade with Zamora was practically the same as that of her husband. The conversation with Rodriguez, as detailed by Mrs. Vela, was corroborated by Pedro and Gertrudes Trevino.

Juan Vela Zamora testified that he paid off the vendor's lien notes and the deed to the two lots was made by appellees, and he told Nicolas Vela:

"Well, Nicolas, you know that I have got no interest in the house. If in one, two, three, four, five, or six months you have the money for it, if it takes you one, two, three, four, five, or six months, you can give me my money back and I will give you the deed back and you will only have to make the expenses of making a new deed."

Again he swore that after the deed was executed he told Nicolas:

"In one, two, three, four, five, or six months if you have the money, I will take the money and give you the deed on it."

Zamora sold the lots to Rodriguez for $200. The vendor's lien notes, executed by appellees, were given to Zamora when he paid the holder of the notes.

T. A. Bunn, who held the notes, and was a witness for appellants, testified that when Vela and Zamora came to him to arrange the transfer of the lots Zamora said:

"I do not want Nicolas to get into trouble, so I am going to let him have the money, but of course I have got to protect my interest and I have got to have some protection and he has agreed to give me two lots that he has out there as security and we want you to make out the papers."

He testified that Zamora further said:

"The understanding is that I am to let Nicolas have $150 and he is to give me two lots for security, with the understanding that if he don't pay me the money in six months" then the property became Zamora's.

Zamora did not pay any money directly to Vela, and only paid off two notes for $50 each, with interest from February 28, 1914, to November 16, 1915, at 8 per cent. per annum, which amounted to about $114. Zamora claimed, however, to have paid $150 on that debt. Bunn testified that the amount due on the notes and $1.50 for writing the deed were paid to him.

We overrule the first and second assignments of error. We think the evidence sufficient to show that the deed was intended as a mortgage to secure the amount paid by Zamora on the two notes. The evidence of Zamora himself tends to show that the deed was in truth a mortgage rather than a conditional sale which he seeks to make it. He stated that the deed was given as security for money loaned. The debt was not canceled by the execution, and Zamora, and not appellees, held the notes after the money was borrowed. The transaction had all the earmarks of a transfer by the holder of the notes to a purchaser of them, and a mortgage given by the maker of the notes to secure them. Why Zamora should have chosen this method of securing himself, we fail to understand, when the transfer of the notes and the superior title would have given him all the lots to secure him. He may have had the secret design to place appellees in a position where he could claim the two lots without litigation, and be saved the trouble and expense of a foreclosure of the vendor's lien. Had he denied the agreement to reconvey the two lots, the fact that he had better security without the deed than with it would be a potent circumstance to show that the deed was given in full payment of the debt. However, his testimony and that of appellees shows that there was an agreement to reconvey and that the deed was given only to secure the debt. The facts of this case differentiate it from the cases cited by appellants as a brief review of them will show.

In the case of Miller v. Yturria, 69 Tex. 549, 7 S. W. 206, contemporaneously with the execution of the deed sought to be shown to be a mortgage, a written agreement was made that the debt might be paid off in six years, and it was explicitly stated in the agreement that the deed evidenced a conditional sale. There was no escape from the conclusion that the transaction was a conditional sale and not a mortgage. The court said:

"A conveyance, however, which purports to be a sale, either absolute or conditional, may be

shown to be a mortgage by proving that it was intended merely as a security for a debt."

The facts in that case showed conclusively that the debts had been fully extinguished by the execution of the deed.

In the case of Hardie v. Campbell, 63 Tex. 292, it was held:

"That a deed absolute on its face may be shown * * * to be a security for debt, and therefore in legal contemplation a mortgage, is so firmly settled as to admit of no question. * * * When it is claimed that such a conveyance was in fact intended as a mortgage, the usual test applied is this: Was the relation of creditor and debtor terminated by the transaction? If so, it is not a mortgage; but if the debt subsists, and that relation exists as well after as before the transaction, then the instrument will be considered as a mortgage."

There was a letter in that case in which was contained the following language, "If at the end of 12 months you want to purchase the house from us, you can do so on favorable terms," and it was held that the language, construed with other portions of the letter, failed to show a conditional sale. That case has no applicability to the facts of this case.

The case of Pierce v. Fort, 60 Tex. 464, has no bearing upon this case, and the cases of Cuney v. Dupree, 21 Tex. 211, and Grooms v. Rust, 27 Tex. 231, merely enunciate the rule as to what character of proof is required engraft trust upon a deed absolute upon its face.

In the case of Calhoun v. Lumpkin, 60 Tex. 185, the facts were that the deed was understood by the parties to be an absolute sale; it was agreed that the note should be and that it was canceled and extinguished, and the possession of the property was given to the vendee. There were other facts tending to show an absolute sale, and of course the court held that it was an absolute sale. In the case before us the debt was not extinguished; vendee stated that the deed was given as security and the notes executed by appellees were given to the vendee, and the presumption would obtain that he still holds them.

In the case of Moreland v. Barnhart, 44 Tex. 275, the rule as to the character of evidence required to show a deed absolute on its face is a mortgage is stated. The trust in the case before this court has been shown according to the requirement of that rule. The case of Markham v. Carothers, 47 Tex. 21, also merely states the rule as to the class of evidence required in such cases.

The case of Gazley v. Herring, 17 S. W. 17, was decided by the Commission of Appeals, and the facts showed that there was no note or other written evidence of debt, and the facts showed overwhelmingly that the deed was absolute having been made to settle an attorney's fee. No debt existed after the deed was executed.

The cases of Focke v. Buchanan, 59 S. W. 820, and De Shazo v. Eubank, 191 S. W. 369, merely reiterate the rule as to the kind of evidence required to show that a deed absolute on its face is in fact a mortgage. In none of the cases reviewed did the vendee admit that the deed was taken to secure a debt, and in none of them was there proof which showed that the debt was not extinguished by the execution of the deed.

The questions involved in this case are fully discussed by this court in the case of Hume v. Le Compte, 142 S. W. 934, and a writ of error was refused by the Supreme Court. This court said:

"The instrument was evidently intended as security for a debt, and as between a mortgage and conditional sale equity will construe the instrument as a mortgage."

In that case, as in this, no claim had been made to the land until long after the deed was executed, and the vendee had never been in possession of the land, nor was it shown that he had ever paid taxes on it.

In the case of Loving v. Milliken, 59 Tex. 425, it is held:

"The circumstances from which equity usually deduces the conclusion that a deed in form is in reality a mortgage, are exactly those which are prominent in this case. The existence of a previous indebtedness between the parties; the need which the grantor has for money; a negotiation between the parties, in which a mortgage is discussed, though apparently refused; an agreement to furnish more money and extinguish an old debt for a deed to the property; a sale finally agreed on for much less than the property is worth; a statement of willingness by the grantee to reconvey if the money is refunded; no change in possession of the property taking place, as is always contemplated in absolute sales, without some understanding to the contrary."

The circumstances enumerated fit the facts of this case with a nicety and precision that is seldom found in authorities cited to uphold and support a proposition. As in that case, so in this, there was an indebtedness, appellees needed money, there was a negotiation in which a mortgage was mentioned, though seemingly not adopted, the value of the land was greater than the debt paid by Zamora, there was an agreement to reconvey in case money was repaid and there was no change in the possession of the lots.

Rodriguez was not an innocent purchaser. He went to appellees to buy the land and was told that, although Zamora claimed the land, appellees would contest the claim. Rodriguez knew of no claim to the land by Zamora and he sought to buy from appellees. He was informed that the claim of Zamora was only a mortgage, and he admitted that he offered to lend appellees the money required to pay off any claim against the land.

There was a plea in the answer of Zamora that if the deeds were canceled he should have judgment for $150, and that a lien be foreclosed on the property. This was not done; there being merely a recitation in the judgment that appellees had deposited $124 in court for Zamora. There is no order that the money be delivered to him, and no decision that the money is his, except in so far

as it may be inferred from the fact that it had been deposited in court for him. Appellants, however, made no objection to the judgment in this regard in the trial court and have offered none in this court, but seem to be satisfied with the judgment in connection with the deposit.

[2] The evidence claimed to be newly discovered was merely cumulative, and portions of it were probably not true, as it contradicted both Zamora and Vela as to matters occurring before the deed was executed. It would not probably have changed the result had it been used on the trial. The cross-assignments are overruled.

The judgment will be affirmed.

⊙⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes