No. 2589.

## N. J. HART v. MAX EPPSTEIN.

1. MORTGAGE—CONDITIONAL SALE.—Hart applied to Eppstein & Co. for a loan. Max Eppstein, for E. & Co., conferring with Hart, agreed upon the terms and security. The security to be a mortgage upon a tract of land much in excess in value of the loan. The parties, H. and the agent, went to a lawyer to prepare the necessary papers. On consultation and advice Hart executed to the agent an absolute deed for the land, and to E. & Co. his promissory note payable to bearer, bearing interest at twelve per cent per annum, and due seven months thereafter, and stipulating for an attorney fee of ten per cent if collected by legal proceedings. *Held:*

(1) That the note and deed together constituted one transaction, and with the attendant circumstances evidenced a loan of money.

(2) That a parol agreement otherwise would not alter the terms of the contract.

(3) Nothing short of a valid subsequent contract could alter its character, etc.

(4) In a suit to redeem, both the agent in whom the title to the land was passed, and the holders of the note, were necessary parties.

APPEAL from Hunt.   Tried below before the Hon. W. C. Jones, Special District Judge sitting instead of District Judge J. A. B. Putman, of Eighth Judicial District.

*B. F. Looney,* for appellant: The court erred in its charge, because, upon the whole, the jury was charged, in effect, that they should find for the plaintiff, if they believed that the deed was executed for the purpose of securing the payment of the note, unless they believed that Hart had failed to pay the note on or before maturity, in which event they should find for defendant; in other words, if the note was paid on or before maturity, the instrument was a mortgage; if not, it was an absolute deed.   (59 Texas, 423; 3 Texas, 1; 43 Texas, 560; 30 Texas, 330; 6 S. W. Rep., 306; 7 S. W. Rep., 209; 52 Texas, 453; 60 Texas, 185; 7 Cranch, 233; 1 Jones on Mortgages, secs. 266, 269, 332; 3 Pomeroy's Equity, sec. 1193, and balance of chapter.)

A mortgagor can not make an agreement cotemporaneous with the execution of the mortgage that would preclude him or those claiming in privity with him from redeeming.   That is to say, the policy of the law is against the equity of redemp-

tion being thus disposed of. (Jones on Mortgages, secs. 251, 1045; 3 Pomeroy's Equity, sec. 1193; 30 Texas, 340; 1 Jones on Mortgages, 340; 3 Pomeroy's Equity, sec. 1193.)

*Mathews & Neyland,* for appellee: The court correctly charged the jury as to what a mortgage is; it also gave in charge a correct definition of a conditional sale; and the facts being before the jury under a proper charge, the appellant has no right to complain. even if her special charge was unobjectionable and was refused. It is not error to refuse a special charge where all material and proper questions are charged on by the court. The facts show that Hart was endeavoring to borrow money from Eppstein, and by Hart's testimony that he had partially succeeded in obtaining a loan on the strength of the land security until he and Eppstein went to Neyland's office; then the whole nature of the transaction was changed. Hart confesses that he understood that he was to have until October 1, 1885, to pay the four hundred and fifty dollars and interest; that unless he paid by that time he was to lose his right to re-purchase. Eppstein and Neyland also testify that such was the intention, understanding and agreement.

Eppstein treated the land as his own after the first day of October, and his ownership was never questioned after that date until suit brought, and the note was treated as settled. (R'y Co. v. Medaris, 64 Texas, 92; McBride v. Banguss, 65 Texas, 174; see 1 Sayles Texas Civ. Stats.; note 3, p. 441.)

A conditional sale is a conveyance granting an apparent full title to become absolute on the happening or failure to happen at some future event; or is a conveyance which on its face shows that the title is not absolute, but may become so on the happening or not happening of some event. Such conveyances are recognized and protected by law.

In this case time was of the essence of the contract. If the money was paid by October 31 the title was to be re-conveyed to Hart; if he did not pay by that date, then the title became absolute and perfect in the grantee, unhampered by any claim of re-purchase. Such an agreement or contract is legal, and will be sustained. (Astugueville v. Loustaunau, 61 Texas, 233; Hubby v. Harris, 68 Texas, 92; Jones on Mort., sec. 259.)

STAYTON, CHIEF JUSTICE. This suit was brought by appellant to cancel a deed made to appellee by Lib Hart for one hundred and thirty-eight acres of land, executed March 31,

1885. Appellee claimed the land through that deed, and the appellant claimed it through a deed executed to her subsequently by Lib Hart.

She claimed that while the deed through which the appellee claimed was absolute in form, it was intended to secure a loan of money made on the day of its execution by E. Eppstein & Co. to her vendor.

The answer alleged that Lib Hart, being in need of money, made application to E. Eppstein & Co. for a loan of four hundred and fifty dollars, and that appellee, as agent for the firm, came from Sherman, where the firm did business, to Gainesville, where Lib Hart resided, to negotiate the loan.

The answer then alleges that "defendant asked of said Lib Hart security. The said Lib Hart offered to give a mortgage on the land described in plaintiff's petition to secure the payment of the sum of four hundred and fifty-six dollars and seventy-five cents, which was the sum he needed and desired to borrow from said E. Eppstein & Co. For a long time the said defendant declined to take said land as security for the money, but finally he agreed with the said Lib Hart that he would for the firm of E. Eppstein & Co. lend him said sum of money and take his note therefor, to become due on the first day of October, 1885, said note to bear twelve per cent interest from date, if said Lib Hart would make him a deed to said land absolute on its face. And he further agreed if said Hart should pay said note according to its face and tenor, on or before its maturity, that he would reconvey said land to him, but it was expressly understood, contracted and agreed then and there that, should said Lib Hart not pay said note by the time it became due that the said Hart should have no further right to said land, but it should become the property of the said Max Eppstein, for the use of E. Eppstein & Co., and said note should be considered settled by said land. That Hart never paid said note or any part thereof, and defendant, Mr. E. Eppstein, had never demanded of him to pay the same, but had treated and considered same paid under the terms of said agreement, and the said Lib Hart never offered or tendered the money before or at the maturity of said note to pay said note, and has always treated the land as belonging to defendants and the note as settled, whereupon defendants say that said deed was not made by said Lib Hart as a mortgage, but was intended for and was a conditional sale, and said note not having been paid,

and the conditions requiring a reconveyance of said land to Lib Hart never having been fulfilled by said Hart, the title to said land to be vested in defendant for the use of E. Eppstein & Co., wherefore defendant says that the said land belongs to him for the use of E. Eppstein & Co., and here tenders to said Lib Hart his note," etc. There is no conflict in the testimony as to the agreement made between Lib Hart and the agent of E. Eppstein & Co. It was agreed that the firm would lend to Hart four hundred and fifty dollars, for which a note bearing interest at the rate of twelve per cent per annum from date of note, and conditioned to pay ten per cent attorney's fees in case resort to suit became necessary to collect it, was to be executed by Hart, and that the land in controversy in this suit should be mortgaged to secure the payment. So stood the agreement when the parties went to a lawyer to have the necessary papers prepared. After reaching the lawyer's office, it appears from the evidence offered for the appellee, that a conversation occured between appellee and the lawyer, after which these persons objected to taking a mortgage in the ordinary form or with power to sell, on the ground that, if the note was not paid, and a sale of the property became necessary, appellee "would be bound to claim title through a sheriff's or trustee's sale, which fact might injure the sale of the land, as farmers are rather suspicious of titles coming through forced sales."

The attorney states that he "suggested that Eppstein take an absolute deed to the land, and that he give Hart the right to buy the land back by a date to be agreed on. Hart asked me if that would protect him as well as a mortgage. I told him the difference between the transaction and a mortgage was, that if he paid the sum agreed on, by the date fixed, he could enforce a reconveyance of the land, but that if he did not pay by the time fixed, his right to a reconveyance would be lost, and his land would become the absolute property of the grantee without suit to foreclose and attendant costs."

The deed in controversy was executed on March 31, 1885, and in terms conveyed the land to appellee, the consideration stated being four hundred and fifty dollars. On the same day Lib Hart executed and delivered his promissory note as follows:

"GREENVILLE, TEXAS, March 31, 1885.

"On or before the first day of October, 1885, I promise to pay E. Eppstein & Co., or bearer, four hundred and fifty-six dollars

and seventy-five cents, with twelve per cent interest from date until paid; and I agree to pay ten per cent additional on the amount of this note when due, if collected by legal proceedings, as attorney's fees.

"LIB HART."

This note remained in the possession of appellee, or in possession of E. Eppstein & Co., until tendered in court. The appellee seems not to be a member of the firm of E. Eppstein & Co. The tract of land described in the deed contains one hundred and thirty-eight acres, and the great weight of the evidence tends to show that it was worth about eight dollars per acre at the time the transaction occurred.

Mrs. Hart tendered and paid into court the entire sum due on the note, including interest to date of tender. None of the witnesses were able to explain why the note was taken for more than four hundred and fifty dollars, which was the sum actually delivered to Lib Hart.

There are many assignments of error, but only two of them will be considered.

The court gave the following charge: "If, however, you believe from the evidence that said deed was executed by said Lib Hart under an agreement made between him and Max Eppstein at the time of its execution, that if he, Lib Hart, should pay off and discharge said note at its maturity, he, Max Eppstein, would reconvey the land to said Hart, and in the event that he failed to pay off said note at or before its maturity, said deed should become absolute, and the title to the land should vest in said Max Eppstein, then you should find for the defendant." And this is assigned as error.

The true character of the instrument, which on its face purported to be an absolute conveyance of the land, must be determined by the facts existing when it was executed, and not by facts subsequently occurring, or by parol agreements made at the time it was executed.

If it was a mortgage at that time, nothing short of a valid subsequent contract can alter its character. "Once a mortgage always a mortgage," has become axiomatic.

To ascertain the character of the instrument, we must look to the facts existing when it was executed, and we must regard the note executed at the time the deed was, and relating to the same matter, both as one instrument.

If the money delivered to Lib Hart was not intended by the parties to be at the time an actual payment for the land, and nothing else, it must have been a loan. If it was a loan, the deed was made to secure it, and was necessarily a mortgage.

The acts of the parties at the time leave no doubt of the fact that the money passed to Lib Hart as a loan.

The parties negotiated with reference to a lending of money and securing its payment, and neither of them then contemplated an absolute sale, nor negotiated for a price at which the one was willing to sell and the other to buy.

Lib Hart, to evidence the fact of his indebtedness to the real lenders, executed a note payable to them or bearer at a future time mentioned. This note was received by their agent to witness what? Such an agreement as the appellee now seeks to maintain? Certainly not, for it contains no such agreement. Was it to evidence the fact and amount of indebtedness of its maker to the lenders? This is what it did. It was accepted by the lenders, and Lib Hart would be concluded by it from asserting to the contrary, in the absence of some fact, which at law or in equity would entitle him to show that it was not his contract.

Equally were the lenders bound by it. It was made payable to bearer, and it is impossible to believe that any sane man, not intending to bind himself absolutely thereby, to pay to the lenders, or such person as they might pass it to, the sum which he thereby bound himself to pay, would have executed it.

The lenders received it and held it. Why? Certainly not to evidence the right of its maker to have the land reconveyed to him, but for the purpose of having evidence conclusive on its maker that he owed them so much money. Was it the intention of the payees that they, or such person as they might pass the note to, should have the right to enforce its payment by suit if necessary? That it was is evidenced by the fact that, in addition to taking a solemn promise to pay, they exacted the further promise that the costs which would have to be incurred with attorneys in enforcing its collection in the courts should be paid by the maker to the extent of ten per cent of the sum due by the terms of the note.

The appellee's answer on its face shows a lending of money, and makes the deed absolute on its face, only a mortgage.

Such being its condition when made, such it remains; and can not be altered by any verbal agreements or understand-

ings made at the time. (Witson v. Demmite, 21 Mo., 325; Vanderhage v. Nugues, 2 Beasley, 244; Batty v. Snook, 5 Mich., 231; Weathersby v. Weathersby, 40 Miss., 469; Youle v. Richards, 1 Saxton, 534; Norris v. Executor of Nixon, 1 Howard (U. S.,) 118; Stephens v. Cushman, 35 Ill., 197; Fiedler v. Darrin, 50 N. Y., 442; Smith v. Doyle, 46 Ill., 451; 2 Washburn on Real Property, 496; Jones on Mortgages, 263–280; Lowery v. Milliken, 59 Texas, 423; Calhoun v. Lumpkin, 60 Texas, 185.)

The charge complained of made verbal agreements, made at the time of the execution of the deed and note, to control the rights of the parties, when this should have been made to depend upon the real transaction between them as evidenced by those papers and the surrounding facts.

The relation of debtor and creditor being created by the papers and attendant facts, the deed was but a mortgage, and the right of redemption could not be cut off by any understandings or agreements then made.

A motion for new trial, based on the ground that the evidence clearly showed the transaction only to give a mortgage, was overruled, and we are of the opinion that this was error. We have already stated many reasons why the deed should be considered only a mortgage, and there are others, among which may be noticed the inadequacy of the consideration; and upon the facts stated in the answer of appellee as well as those stated by himself and the other witness in his behalf, no finding in his favor ought to have been permitted to stand.

The judgment, on account of the matters noticed, will have to be reversed, but we deem it proper to say, from the case made, that the persons composing the firm of E. Eppstein & Company seem to have such an interest in the subject matter of litigation as requires that they be made parties defendant.

*Reversed and remanded.*

Opinion delivered November 13, 1888.