### SHELP et al. v. DECKER. (No. 1122.)

(Court of Civil Appeals of Texas. Beaumont. May 28, 1924. Rehearing Denied June 4, 1924.)

**1. Mortgages ⬅️37(2)—Deed may be shown to be mortgage by parol evidence.**

An instrument in form of absolute deed may, by parol evidence, be shown to be a mortgage.

**2. Mortgages ⬅️32(6)—Deed construed with reference to instruments executed in connection therewith, to determine whether a mortgage.**

In construing a deed, to determine whether it is in fact a mortgage, all written instruments executed in connection therewith, and purporting to set forth the consideration and intent of the parties in its execution and delivery, are construed as part of the deed; but the language of the deed and other instruments yield to the facts as they actually existed.

**3. Mortgages ⬅️37(2)—Paragraph in contract giving grantee right to insure and pay liens held to render parol evidence admissible to show intent of parties in deed.**

A paragraph, in contract executed contemporaneously with deed, giving grantee the right to insure and pay off liens or charges against the property, *held* to render the deed so ambiguous as to admit parol evidence to determine whether it was in fact a mortgage, especially where the writings showed that the property far exceeded in value the debt of a third party paid by grantee.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by H. R. Decker against Elizabeth M. Shelp and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Garrison & Watson, of Houston, for appellants.

Carothers & Brown, of Houston, for appellee.

WALKER, J. This suit was instituted in the form of trespass to try title by appellee against appellants to recover the title and possession of a certain lot in the city of Houston, Harris county, Tex. Appellants answered by a plea of not guilty, and specially that the deeds from them to appellee, upon which his title to the land rested, though in form an absolute deed, were executed under an agreement that they were to constitute a mortgage. Appellee was awarded the lot in controversy under a verdict instructed by the court.

Appellee offered in evidence a warranty deed from Mrs. Elizabeth M. Shelp conveying to him the lot in controversy, dated the 1st day of June, 1920, reciting a consideration of $3,524. He also offered a deed from appellant W B. Shelp of the same date, conveying to him the same lot on a recited consideration of $1. Appellee rested his case on this evidence. Appellant W. B. Shelp then testified for the defendants as follows:

"My name is William B. Shelp. I am one of the defendants in this case. My mother's name is Elizabeth M. Shelp. She lives in Forest Hills, lot 55, and has been living there either six or seven years last November. My minor brother and myself are living with her. My father died in 1910. At the time this deed was executed by my mother to Mr. Decker, she was living with me in that house—the same place she has been living the last seven years. My mother had a deed to that property. At that time my mother did not have any other homestead other than that property there. At that time she was occupying that property and using it as a homestead."

All other evidence offered by appellants was excluded, to which action of the court due exception was taken. The bill of exception reflects that appellant W. B. Shelp would have testified, had the court received his evidence, to the following facts:

On the 1st day of June, 1920, a Mr. Sweeney held a deed of trust against the lot in controversy, to secure an indebtedness which on that date amounted to $3,524; that Sweeney had advertised the property for sale on that day and was proposing to sell it at 10 o'clock a. m.; that he and his mother for some time prior to that day had been negotiating with appellee to get him to take up and carry for them the Sweeney indebtedness, and that appellee had agreed with them in their negotiations to pay off the Sweeney indebtedness, that appellee was very friendly with appellants and had been a guest in their home prior to June 1, 1920; for some reason appellee postponed from day to day the taking up of the Sweeney indebtedness; that on June 1, 1920, he again proposed to take up this indebtedness, and, to give him time to do so, the Sweeney sale was postponed from 10 o'clock a. m. until some hour in the afternoon. Thereupon on June 1, 1920, after the sale had been postponed, ap-

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pellants executed, acknowledged, and delivered to appellee the following instrument:

"The State of Texas, County of Harris.

"This agreement between Elizabeth M. Shelp, a feme sole, party of the first part, and H. R. Decker, party of the second part, both parties being residents of Harris county, Tex., witnesseth:

"I. The party of the first part is indebted to J. J. Sweeney in the sum of thirty-five hundred and twenty-four ($3,524.00) dollars, the said amount being secured by a certain deed of trust given by W. B. Shelp and Elizabeth M. Shelp to E. R. Campbell, trustee, on August 5, 1912, recorded in the Mortgage Records of Harris County, Texas, vol. 102, page 309, and by such renewals of said instrument and lien as appear of record in Harris county, Tex., and the said property is about to be sold under foreclosure, this agreement is made in order to prevent the said property from being sacrificed at foreclosure sale, and to enable the party of the first part to realize a part of such profit as can be realized from the sale of the property covered by said deed of trust within the next ninety days.

"II. The party of the second part hereby agrees that he will pay off and satisfy the said deed of trust, and, in consideration therefor, the party of the first part hereby agrees that she will forthwith execute and deliver to the party of the second part a general warranty deed conveying to the party of the second part the property covered by the said deed of trust, to wit: 'A certain tract or parcel of land lying and being situated in Harris county, Texas, and particularly described as follows, to wit: Lot number fifty-five (55) of what is known and platted as "Forest Hill," being a subdivision of a part of the Jacob Thomas one-fourth (¼) league in Harris county, Texas, near the city of Houston, and being the same land conveyed to W. B. Shelp by the Vaun Dun Company by deed dated May 21, 1910, recorded in the Deed Records of Harris County, Texas, vol. 258, page 347.'

"III. It is agreed that for ninety days from this date the party of the first part shall have the exclusive right to find for the party of the second part a purchaser for the said land who will buy same for not less than five thousand ($5,000.00) dollars in cash, and, if such purchaser is so found, party of the second part hereby agrees that he will convey said land to the purchaser thus found, and will pay to the first party as compensation for finding such purchaser one-half (½) of the net amount received from the proceeds of such sale, after deducting therefrom the following amounts, to wit:

"(a) The sum of $3,524.00 with eight per cent. interest from this date until the consummation of such sale;

"(b) Any amount which is paid out by the party of the second part to keep the improvements on said property insured;

"(c) Any amounts paid out by second party in relieving said property of any other liens or charges against same; and,

"(d) Any expenses incurred by party of the second part with the consent of party of the first part, for repairs or betterments on said premises.

"IV. Party of the second part shall have the right to insure said property and to pay off any liens or charges against same.

"V. It is intended that the said deed shall vest the title to said property absolutely in the party of the second part, and the party of the first part shall have no title whatever to said property after the execution of the said deed. The only right which party of the first part shall have in connection with said property shall be the exclusive right to sell said property at any time within the next ninety days and to reap a profit from such sale, if one is made, as provided for in this agreement. If no sale is made within said ninety day period, then party of the first part shall have no further right, claim or interest in said property, or in the profits from any sale which may be made thereafter.

"Executed in duplicate this 1st day of June, A. D. 1920.

        "Elizabeth M. Shelp,
            "Party of the First Part.
      "H. R. Decker,
            "Party of the Second Part."

We quote from the bill of exception the following additional testimony of W. B. Shelp as offered by appellants:

"Q. At any rate, that was the agreement that was executed at the time, and that was the agreement under which Mr. Decker advanced the money? A. That is the agreement we signed; yes, sir.

"Q. That agreement was explained to you and read over there in the office, was it not, Mr. Shelp? A. Yes, sir; and Mr. Decker there in your office that day assured my mother not to be afraid to sign the paper; he would never take advantage of her.

"Q. You had it explained to you that if you didn't exercise this option within the 90 days you would have no further title, did you not? A. No, sir; I had it explained to me that I would have my own sweet time to take care of it, and I never would be crowded, and Mr. Decker never did crowd me for over a year— a year and a half.

"Q. You said in your direct testimony that you had never paid any rent, and he has never demanded possession of the property. Isn't it a fact, Mr. Shelp, that Mr. Decker delegated Howard Smith and Roland Ring to make a settlement with you, and they asked you to deliver possession of the property? A. Yes, sir; they negotiated with me for a settlement, but the settlement figured 'way up yonder and included a whole lot of other things that did not connect with this matter at all. As a matter of fact, I think if everything was figured in it would run up about $8,000.

"Q. Isn't it a fact that they asked you to deliver possession or sign a lease on the property and you declined to do so? A. They brought an instrument to me which I don't think I read fully, but which they asked to sign up to give them possession of the property.

"Q. And you wouldn't do it? A. I didn't refuse or agree; I didn't say what I would do.

"Q. Do you remember when that was, Mr. Shelp? A. I don't remember exactly. I expect probably that was a year after—

"Q. Probably in June, 1921? A. I don't know.

"Q. Mr. Decker went back to Wichita Falls,

did he not, immediately after this transaction? A. He went back to Wichita Falls along in July some time, I believe; I don't remember the exact date.

"Q. You made several attempts to sell this property and to reap one-half of the profit over the $3,524? A I have endeavored to sell this property ever since this arrangement was made.

"Q You discussed with me several times making a sale, you thought you had a sale and expected to live up to the agreement? A. I never told you what I would live up to, because I had a signed agreement with Mr. Decker that all he would ask for was his money.

"Q. When was that agreement made, how long after the first agreement was made? A. The agreement I am speaking of now?

"Q. Yes, sir. A. Both before and after this deed was executed.

"Q. Both before and after? A. Yes, sir; several times. We discussed the thing very harmoniously; never was any difference between Mr. Decker and I until about a year and a half afterwards.

"Q. You also had Mr. Liddell as your attorney undertaking to make an adjustment of this matter? A. Yes, sir.

"Q. And while he was your attorney, Mr. Decker tried to get you to sign up a lease on the property? A. I don't recall any lease. I believe Mr. Decker offered to settle for $5,300 or $5,400.

"Q. Mr. Liddell was representing you in the fall of 1921, wasn't he, October, 1921? A. I don't remember the exact month or day, but he represented me at one time, about a year and a half afterwards."

All the parol evidence offered by appellants to show the intention and purpose of the parties in executing the written instruments and the two warranty deeds was excluded by the trial court on the theory that it was an effort to vary the written instrument by contemporaneous parol evidence.

## Opinion.

[1, 2] The exclusion of this evidence was error. It is well established in the jurisprudence of this state—a proposition conceded by appellee—that an instrument in the form of an absolute deed may, by parol evidence, be shown to be a mortgage. Appellee concedes that the circumstances surrounding and attending the execution and delivery of a deed may be inquired into by parol evidence to ascertain the true intent of the parties in its execution and delivery, and that that intent, when ascertained, controls the character of the deed. But he insists that this rule does not inhibit the contracting parties from reducing to writing the true consideration and intent, and when that has been done, the writing which proports to set forth the true consideration and intent cannot be varied by parol evidence.

In construing a deed, all written instruments executed in connection therewith and purporting to set forth the consideration and intent of the parties in its execution and delivery are construed as a part of the deed and as if incorporated therein. So, in this case, the deeds and the written contract under which they were executed must be construed as if embodied in one instrument. The purpose of the rule as conceded by appellee is to effectuate the true intent of the parties. But, in order to give force to this rule, the language of the deeds and their contemporaneous writing must yield to the facts as they actually existed, and to the contract as actually made. As said by our Supreme Court in Gray v. Shelby, 83 Tex. 405, 18 S. W. 809:

"It matters not what the language used or the form imparted to the instrument, if it was intended to secure the payment of money it must be construed as a mortgage."

For other authorities, see Stamper v. Johnson, 3 Tex. 1; Mann v. Falcon, 25 Tex. 275; Walker v. Wilmore (Tex. Com. App.) 212 S. W. 655; Hart v. Eppstein, 71 Tex. 752, 10 S. W. 85; Stephens v Sherrod, 6 Tex. 294, 55 Am. Dec. 776; Keller v. Kirby, 34 Tex. Civ. App 404, 79 S. W. 83; Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284; Soell v. Hadden, 85 Tex. 188, 19 S. W 1087; Hume v. Lecompte (Tex. Civ. App.) 142 S. W. 934; Melina Mansfield et vir v. Orange Investment Co., 260 S. W 307, a case by this court not yet officially reported

The parol evidence of the witness W. B. Shelp would have raised the issue, had the court received the same, that the parties in executing the warranty deeds and the separate instrument providing for their execution did not intend that the absolute title should vest in appellee, but only that he should hold the title as security for the money advanced in taking up the Sweeney claim.

[3] But on the face of these deeds and the instrument under which they were executed, we believe the court erred in excluding the parol evidence of W. B. Shelp. It clearly appears from these instruments that the parties thereto valued the lot at a price largely in excess of the amount of the Sweeney indebtedness, and that appellants were trying to save a part of their equity. It matters not what the actual value of the property was, nor that appellants were not able to sell it for the $5,000 within the time stipulated in the contract. The contract was made on an assumed valuation, and, as we have just said, the parties were dealing with it on that valuation. This appears on the face of the writings. Then we find in the contract to convey this significant paragraph:

"IV. Party of the second part shall have the right to insure said property and to pay off any liens or charges against same."

If the title to the lot was to vest in appellee under the deeds, and if in fact he was

to have absolute title, why was it necessary to give him express authority to insure the property? The paragraph immediately preceding the one just quoted provided for the return to appellee of all money paid out by him for insurance. If the deeds vested in him the absolute title to the property, why should he be given express authority to pay off liens? These rights are inherent in ownership and were his without any additional grant from appellants. To give him that right by an express agreement was inconsistent with the theory of an absolute grant of title. The necessity for an express grant of the right to insure the property and to pay off liens leads to the inference that these rights were not conveyed by the deeds, and that the deeds, though absolute in form, did not express the true intent of the parties. If this paragraph, as a matter of law, does not make the deeds a mortgage, it renders them and the contract under which they were executed so ambiguous as to admit and require extraneous evidence—parol or written—to show the true intent of the parties in their execution and delivery.

For the error of the court in excluding the parol evidence of the appellant W. B. Shelp, this cause is reversed and remanded for a new trial.