**WILCOX et al. v. DILLARD.** (No. 2864.)*

Court of Civil Appeals of Texas. Amarillo.
Oct. 5, 1927.

Rehearing Denied Nov. 2, 1927.

1. Mortgages ⊚⟺37(2)—As between parties parol evidence is admissible to prove deed absolute on its face is mortgage.

As between parties, parol evidence is admissible to prove that conveyance which purports to be absolute was given as security for debt and is therefore merely a mortgage.

2. Mines and minerals ⊚⟺54½—Finding that transfer of oil lease constituted mortgage and not absolute sale held proper under evidence showing loan was intended.

Finding that transaction whereby oil and gas lease was assigned in return for payment of sum of money to assignor, with provision that assignee might dispose of lease within 30 days, paying excess to assignor, was in fact loan and mortgage and not an absolute sale of the lease, held proper under evidence.

3. Corporations ⊚⟺428(11)—Corporation held chargeable with knowledge that assignment of lease to its president was for security, where application for loan was made to president as representing corporation.

Where assignor of oil and gas lease began negotiations for loan from corporation with president, who subsequently decided to make the loan individually and take assignment of lease to himself, corporation was chargeable with all information relative to the transaction which came to president while acting in corporation's behalf, and corporation taking assignment of the lease from president could not therefore deny that first assignment was given as security.

4. Corporations ⊚⟺432(12)—Evidence that president assigning lease to corporation explained to vice president circumstances attending transaction warranted finding that corporation knew assignment was for security.

Evidence that president of corporation, who took assignment of oil lease as security for loan, explained transaction fully to vice president on making reassignment to corporation, warranted finding that corporation had notice that transaction constituted loan and mortgage.

5. Corporations ⊚⟺428(11) — Corporation whose president took assignment of lease as security, after application had been made for loan from corporation, held not innocent purchaser as to original assignor, on receiving assignment from president.

Corporation taking assignment of oil and gas lease from its president, to whom first assignment was made as security for loan, application having first been made to president acting for corporation, held not innocent purchaser as to original assignor, so as to defeat assign-

or's right to redeem, especially where vice president of corporation also knew of transaction.

6. Corporations ⊚⟺428(1)—It is presumed that officer of corporation acting within scope of authority discloses to principal all facts within his knowledge.

As a general rule, so long as officer or agent of corporation acts within scope of authority, presumption is that he discloses to his principal all facts within his knowledge.

7. Corporations ⊚⟺428(11)—Corporation is chargeable with knowledge of corporate officer who acts in corporation's behalf in dealing with himself as an individual.

Where officer of corporation deals with and for the corporation, dealing with himself as corporation's agent on one hand and as an individual on the other, corporation is chargeable with knowledge of officer.

8. Mines and minerals ⊚⟺54½—In suit to redeem, evidence sustained finding that assignment of lease by one holding it as security only was without consideration.

Evidence held sufficient to sustain finding that local corporation, organized to hold title to local lands, did not pay valuable consideration to foreign corporation for assignment of lease, originally held by president of both corporations as security, in action by president's assignor to establish right to redeem.

9. Mines and minerals ⊚⟺74—Corporation which failed to pay valuable consideration for assignment of lease held not innocent purchaser as to remote assignor claiming original assignment was for security only.

Corporation receiving assignment of lease held not innocent purchaser as to remote assignor of lease claiming original assignment thereof was given merely as security and seeking to redeem, where corporation failed to pay valuable consideration.

10. Appeal and error ⊚⟺931(6)—It is presumed court trying case without jury refused to consider evidence improperly received, where competent evidence supports finding.

Where improper testimony was admitted in action tried to the court, presumption obtained that inadmissible evidence received over objection was not considered, and that court founded his judgment on competent testimony, provided there was sufficient competent evidence to support finding.

11. Pledges ⊚⟺56(5)—Right of redemption of one assigning lease for security held not affected by private sales thereof without compliance with statute (Rev. St. 1925, art. 3810).

Right of redemption of one assigning lease as security held not affected by private sales of lease made by assignee to corporation of which he was president and by corporation, where transferees were not bona fide purchasers, and sales were private sales without any attempt to comply with Rev. St. 1925, art. 3810, which provides how sales of real estate shall be made under power conferred by deed of trust or other contract lien.

---

⊚⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
+Writ of error refused.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit by F. B. Dillard against H. F. Wilcox and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Davidson & Williams and Horace B. Clay, all of Tulsa, Okl., and Hoover, Hoover & Willis, of Canadian, for appellants.

Underwood, Johnson, Dooley & Simpson and F. W. Dillard, all of Amarillo, Okl., for appellee.

JACKSON, J. This suit was instituted in the district court of Gray county, Tex., by the appellee, F. B. Dillard, against the appellants, H. F. Wilcox, H. F. Wilcox Oil & Gas Company, a corporation, hereinafter called the Delaware corporation, and the H. F. Wilcox Oil & Gas Company, of Texas, a corporation, hereinafter called the Texas corporation. From a judgment in favor of appellee, appellants prosecute this appeal. An agreement of the parties in the record shows that the venue of the case was properly transferred to the district court of Hemphill county.

The appellee alleges that on and prior to February 9, 1925, for certain purposes, it was necessary for him to borrow the sum of $1,500; that on or about that date he approached the Delaware corporation and solicited from it, through its president. H. F. Wilcox, a loan of said sum; that after certain preliminary negotiations the Delaware corporation, acting through its said president, agreed to loan the appellee said sum of money; that it was then agreed that appellee should repay said sum within 30 days from February 9, 1925, with 8 per cent. interest thereon; that at the same time it was also agreed that appellee should secure the payment of said sum to the Delaware corporation by executing to it an assignment of an oil and gas lease (fully described in appellee's petition), and that such assignment should be accompanied by a collateral agreement (copied in the petition), which he avers is in effect that appellee should repay said loan within 30 days or sell said lease within 30 days and pay the Delaware corporation the principal and interest of said loan out of the proceeds thereof, and that the said corporation should thereupon reassign said lease to appellee or to the purchaser of said lease, and that in the event appellee failed to repay said loan within the 30 days, the said corporation should have the right after the expiration of the 30 days and within 90 days from February 9, 1925, to sell said lease, and, after repaying said loan of $1,500 and interest, to pay the excess thereof, if any, to appellee; that, acting under the instructions of said corporation, the appellee prepared an assignment of the lease from himself to the Delaware corporation, and also prepared a written memorandum evidencing the collateral agreement; that after such instruments were prepared and submitted to H. F. Wilcox, the president of said corporation, he advised appellee that because of the limitation on its corporate power there was some question as to the authority of said corporation to make such loan and accept the security therefor, but that H. F. Wilcox then advised appellee that he would make the loan in person, take the assignment in his own name, advance the $1,500 upon the same terms, and accept the assignment of said oil and gas lease as security therefor; that the instruments therefore were then amended by an employee of the Delaware corporation under the directions of the president thereof, so as to run to H. F. Wilcox, individually; that H. F. Wilcox did thereupon loan to appellee the sum of $1,500 in cash, which sum appellee agreed to pay to H. F. Wilcox within 30 days, with interest at the rate of 10 per cent. per annum; that concurrently with said loan, and as a part of said transaction, and for the purpose of securing the payment of said loan, and as further evidence of his obligation to H. F. Wilcox, the appellee executed and delivered said assignment and collateral agreement; that at the time the assignment to the oil and gas lease was made and delivered by the appellee, it was understood that H. F. Wilcox had loaned to appellee the sum of $1,500; that such assignment was not intended as a sale, but intended as a mortgage, given by appellee to H. F. Wilcox as security for the payment of said sum of money; that it was also agreed that if appellee repaid H. F. Wilcox that the assignment should be terminated and the rights of H. F. Wilcox thereunder cease, and that the oil and gas lease should be reassigned to appellee, or to any person to whom he directed; that the loan so made and the debt so created has never been paid, and appellee is justly indebted to H. F. Wilcox in the sum of $1,500, with interest thereon at the rate of 8 per centum per annum, from February 9, 1925, which debt appellee acknowledges and tenders into court and offers to pay all sums owed by him to H. F. Wilcox, in full satisfaction of said obligation; that the lien created by virtue of the execution and delivery of the assignment has never been foreclosed in any manner, but is still a valid lien in favor of H. F. Wilcox, subject to be discharged and released on the payment of said loan with interest thereon.

Appellee alleges that after the execution and delivery of the assignment as security for the repayment of the loan, H. F. Wilcox did on March 30, 1925, wrongfully and fraudulently assign said lease to the Delaware corporation by an instrument in writing, executed by himself, and thereafter on the 21st day of April, 1925, the Delaware corporation, by written instrument, assigned and conveyed said lease to the H. F. Wilcox Oil & Gas

Company of Texas, the Texas corporation, all of which instruments were promptly filed with and recorded by the county clerk of Gray county, Tex., in the deed records of said county, and that by reason thereof the record title to said lease is now vested in the Texas corporation; that the assignment from H. F. Wilcox to the Delaware corporation, and the assignment from the Delaware to the Texas corporation, was a part of a fraudulent scheme entered into by the appellants for the purpose of defeating the appellee's title to said oil lease and converting the mortgage, given by him, to H. F. Wilcox, into an absolute sale and conveyance; that H. F. Wilcox Oil & Gas Company is a corporation organized under the laws of the state of Delaware, and that the H. F. Wilcox Oil & Gas Company of Texas is a corporation organized under and by virtue of the laws of the state of Texas, and subsidiary to the Delaware corporation, and that H. F. Wilcox is president of and director in both corporations and owns more than 51 per cent. of the capital stock in each of said corporations; that in making the assignment from himself to the Delaware corporation, said Wilcox acted as president thereof, and acted for himself and was both buyer and seller of said lease; that at the time the Delaware corporation assigned the lease to the Texas corporation, the transaction was handled by H. F. Wilcox as president and director of both corporations, and both corporations knew that the assignment from the appellee to H. F. Wilcox was in truth and in fact a mortgage upon the oil and gas lease and intended by both parties as such, and that all of the appellants were acting in furtherance of a commmon scheme and conspiracy to defeat appellee's vested rights in said lease and convert the mortgage into an absolute conveyance; that the assignment to the Delaware corporation and the assignment to the Texas corporation were each without real consideration, and neither of said corporations became innocent purchasers.

Appellee prayed for a decree adjudging the assignment to be a mortgage, that all the assignments be canceled and the appellants be required to accept the money in payment and satisfaction of the debt of appellee to H. F. Wilcox, and that the title to the lease be divested out of appellants and vested in appellee.

The appellants answered by general denial and pleaded that H. F. Wilcox paid to the plaintiff $1,500 in accordance with the condition of the written agreement dated the 9th of February, 1925, with the understanding that appellee should have the right to dispose of said lease within 30 days provided H. F. Wilcox was paid the sum of $1,500 and interest thereon at the rate of 8 per cent. per annum out of the proceeds of the sale, in which event H. F. Wilcox was to reassign said lease to the purchaser thereof, and with the further understanding that if H. F. Wilcox should sell said lease after 30 days and within 90 days from the 9th day of February, 1925, he should pay to the appellee the balance of the purchase price in excess of the $1,500 and the interest thereon; that the appellee did not exercise the right to dispose of the lease within 30 days and did not pay H. F. Wilcox the sum of $1,500 with interest thereon within said time; that pursuant to the terms of the written agreement, H. F. Wilcox on the 30th day of March, 1925, assigned said oil and gas lease to the Delaware corporation, in consideration of the sum of $1,516.67, which assignment was filed and recorded in the county clerk's office of Gray county, Tex., on the 9th day of April, 1925, in the deed records of said county; that the reasonable and market value of the oil and gas lease on the 13th day of March, 1925, was not in excess of the $1,516.67, and it was sold for its full market price; that on the 21st day of April, 1926, the Delaware corporation assigned said lease to the Texas corporation, in consideration of $1 and other good and valuable consideration, which assignment was filed for record in the county clerk's office of Gray county, Tex., on the 24th day of April, 1926, and duly recorded on the 27th day of April, thereafter; that it was not understood between the appellee and H. F. Wilcox at any time that the assignment from appellee to him was intended as a mortgage, but it was understood and intended as a sale by appellee to H. F. Wilcox in accordance with the conditions and provisions of the written agreement; that said assignment was tendered and accepted in full and complete payment and satisfaction of the $1,500 paid by H. F. Wilcox to appellee, pursuant to said written agreement; that appellee and H. F. Wilcox intended said assignment to be, and the same was, an absolute conveyance and not a mortgage, and that appellee and H. F. Wilcox intended said written agreement to be an option to repurchase or resell said lease; that H. F. Wilcox had no right to compel the appellee to pay him the sum of $1,500 with interest thereon for the reassignment of said oil and gas lease, and the written agreement was an absolute sale; that after the payment of the $1,500 and the delivery of the assignment, there remained no indebtedness from appellee to H. F. Wilcox, and the relation of debtor and creditor did not exist or continue, and there was no enforceable personal obligation against the appellee independent of said oil and gas lease; that the Delaware corporation and the Texas corporation were each innocent purchasers for value, without notice, of any alleged claim of the appellee; that H. F. Wilcox was not the agent for either of the corporations in the transaction specified; and that said corporations had no knowledge

whatever that H. F. Wilcox acted or purported to act for them in the matters and things charged in said petition.

No jury was demanded, but all matters of law and fact were submitted to the court, and judgment rendered in favor of appellee. The assignment of the lease from appellee to H. F. Wilcox and from H. F. Wilcox to the Delaware corporation, and from the Delaware corporation to the Texas corporation, were canceled and the title to the leasehold estate involved in the suit vested in appellee. The court found that the sum of money tendered and deposited in court by the appellee for the account of appellants was the correct amount to discharge appellee's indebtedness, and directed the clerk to pay the money so deposited to appellants upon their execution and delivery of a receipt therefor.

The appellants in their second and third propositions, which we will consider together, challenge as error the action of the court in rendering judgment for appellee because the burden of proof was on him to show that the transaction between him and H. F. Wilcox constituted a loan and mortgage, and the overwhelming testimony discloses that the transaction was not a loan and mortgage, but a sale by the terms of which H. F. Wilcox gave appellee the privilege of reselling the lease within the time and upon the conditions specified in the written agreement, all of which he failed to do, and therefore judgment should have been for appellants.

No findings of fact were requested and none filed, but the court in the judgment finds in effect that on February 9, 1925, the appellee assigned to H. F. Wilcox the leasehold estate involved in the controversy, but that in truth and in fact the assignment was intended as a mortgage given to secure the payment of a loan of $1,500, with interest thereon at the rate of 8 per cent. per annum, and that appellee had and retained the right of redemption and had deposited into court a sufficient sum of money to pay the loan and discharge and satisfy the loan.

The assignment from appellee to H. F. Wilcox is in the regular form ordinarily used in such transactions, and recites a consideration of "one dollar and other good and valuable considerations." The written agreement is as follows:

"Tulsa, Okl., February 9, 1925.

"H. F. Wilcox, Tulsa, Okl. Gentlemen: I have this day assigned to you, as per our verbal agreement, oil and gas lease covering the west half of the. southeast quarter of section 84, block 3, I. & G. N. Railway Company survey, Gray county, Texas, for which you have paid me the sum of $1,500.00, with the understanding that I shall have the right to dispose of this lease within 30 days from this date, provided you are paid the sum of $1,500.00, and interest from this date at the rate of 8 per cent. per annum, out of the proceeds of said sale, and you will assign same to the purchaser. Or, if you should sell said lease after said thirty days time, and within 90 days from this date you will pay me the balance of the purchase price over and above the sum of $1,500.00, and interest thereon, at the rate of 8 per cent. per annum to the date of said sale.

"If this is in accordance with our agreement, please indicate by signing below. Yours truly, F. B. Dillard."

"The above letter correctly sets forth our agreement. H. F. Wilcox, by H. F. Wilcox."

H. F. Wilcox, called as a witness by the appellee, testified: That he was one of the organizers of the Delaware corporation and that he was and had been, since its organization, a stockholder and director therein and president thereof, and that the directors intrusted to him the matter of buying and selling oil and gas leases. That on February 9, 1925, appellee, F. B. Dillard, with his son, Frank Dillard, came to his office, which was the office of the Delaware corporation, and discussed with him the matter of obtaining a loan of $1,500 from the corporation. That appellee explained that his son, Frank Dillard, needed the money to pay certain debts, and that he, appellee, was willing to personally obligate himself for the money. That he also owned the lease in controversy and would give the corporation the lease as security for the payment of the $1,500, stating that the lease was worth many times that sum. That the original inception of the transaction was appellee wanting a loan on the oil and gas lease as security. That he told appellee that neither he nor the Delaware corporation would loan him the money, but that he would buy the lease and give appellee an option to repurchase it in 30 days, and appellee said he would go and prepare the papers. That thereafter appellee returned with the assignment and agreement, which were prepared to the H. F. Wilcox Oil & Gas Company. The witness called Mr. Appleby, who was his private secretary and the secretary treasurer of the Delaware corporation, and had the papers changed so as to read to himself individually. That he understood when he signed the written agreement between himself and appellee that it was based on the verbal agreement theretofore made, but that the written instrument did not embrace all of the verbal agreement. That he understood if appellee within 30 days came to him with $1,500, together with 8 per cent. interest thereon, that he was obligated to reassign the lease to appellee. That if appellee did not repay the money within 30 days, and the lease was sold by the witness, everything over the $1,500 and the interest thereon should go to appellee. That he did not remember when he first learned that appellee had not repaid the $1,500 within the 30 days, but his secretary Mr. Appleby, was in charge of his collections and unpaid accounts and reported such matters to him, and

that he presumed Mr. Appleby reported that appellee had not paid him.

Appellee testified, in substance, that on the 9th day of February, 1925, he and his son, Frank Dillard, went to the office of the Delaware corporation, saw H. F. Wilcox, the president thereof, and explained to him that Frank Dillard neded $1,500 to discharge some indebtedness, and that he, the witness, desired to borrow that sum of money and that the Delaware corporation could make him the loan; that he felt sure he could repay it within 30 days, and would give the lease in controversy for security; that the lease was worth many times the sum of $1,500; that Mr. Wilcox agreed to make the loan and accept the assignment of the lease and the collateral agreement as security; that witness went to his office, prepared the papers, returned and submitted them to Mr. Wilcox, who stated the papers were all right, but he doubted the authority of the corporation to make the loan, but that he would make it in his own name, to which witnesses agreed; that Wilcox called Mr. Appleby, had the papers changed from the corporation to himself, and a check given to witness for the $1,500; that at no time during the negotiations did Mr. Wilcox refuse, for himself or his company, to make the loan, and at no time did he propose to buy the lease; that witness was a lawyer and in his experience of 16 years in the oil country, when an oil and gas lease was given as security, it was by direct assignment and collateral agreement; that Mr. Wilcox wanted the papers so prepared in order to give him the privilege of selling the lease after 30 days, as that method of foreclosure would avoid permitting the loan to run a long time.

Frank Dillard testified that on the 8th of February, 1925, he had a conversation with Mr. Wilcox in regard to borrowing some money, and told him he would like to borrow $1,-500, his father to give security for six months on the lease in controversy; that Mr. Wilcox declined to make the loan for six months, and witness advised him that he would get his father to come to see him the next day; that on the 9th day of February he went to the office of the Delaware corporation with his father, who told Mr. Wilcox he wanted to borrow the money from the company; that he would have the money in 30 days and would repay it and would give him a lien on the lease as security, and Mr. Wilcox agreed that the company would make the loan and told his father to prepare the papers; that after the papers were prepared he and his father returned to the office of Mr. Wilcox and submitted them to him, who stated that he did not think the company had authority to lend the money, but that he would make the loan personally; that he called Mr. Appleby and had the papers changed from the company to himself, after which his father received a check for the money and left the papers with Mr. Wilcox; that at no time was the sale of the lease outright discussed, but it was to be a mortgage; that there was nothing said about a sale and Wilcox did not offer to buy it; that it was agreed that his father would repay the money in 30 days, and that if he failed to pay it in that time, he was to be allowed 90 days.

[1, 2] There is testimony in the record tending to show that at the time of the transaction the lease involved had a much greater value than $1,500. There is additional testimony tending to support the contention of appellee that the transaction was a loan and mortgage. There is also much testimony tending to show that the transaction was a conditional sale as the appellants contend, but we deem the above a sufficient statement of the evidence for the purpose of disposing of these propositions.

"That parol evidence as between parties is admissible to prove that a deed absolute on its face is security for debt and therefore a mortgage is no longer an open question in this State. [Gulf, C. & S. F.] Railway v. Jones, 82 Tex. 160, 17 S. W. 534; Miller v. Yturria, 69 Tex. 554, 7 S. W. 206; McLean v. Ellis, 79 Tex. 398, 15 S. W. 394." Nagle et al. v. Simmank et al., 54 Tex. Civ. App. 432, 116 S. W. 862.

"A conveyance, * * * which purports to be a sale either absolute or conditional, may be shown to be a mortgage by proving that it was intended merely as a security for a debt." Miller v. Yturria, 69 Tex. 549, 7 S. W. 206.

"In construing a deed, all written instruments executed in connection therewith and purporting to set forth the consideration and intent of the parties in its execution and delivery, are construed as a part of the deed and as if incorporated therein. So, in this case, the deeds and the written contract under which they were executed must be construed as if embodied in one instrument. The purpose of the rule as conceded by appellee is to effectuate the true intent of the parties. But, in order to give force to this rule, the language of the deeds and their contemporaneous writing must yield to the facts as they actually existed, and to the contract as actually made." Shelp et al. v. Decker (Tex. Civ. App.) 262 S. W. 807.

"If land is conveyed by an absolute deed but with an agreement that the grantee shall effect the sale of it, and out of the proceeds satisfy an existing debt due to him from the grantor, or repay himself for advances then made to the grantor, * * * it is generally held that the transaction is in the nature of a mortgage, and may be enforced as such, in equity." 41 C. J. p. 327, par. 90; National Bank of Texas v. I. Lovenberg, 63 Tex. 506; O'Neil v. O'Neil (Tex. Civ. App.) 135 S. W. 729; Loving v. Milliken, 59 Tex. 425; Brannon et al. v. Gartman (Tex. Com. App.) 288 S. W. 817; Pomeroy's Equity, vol. 3, pars. 1192, 1193, 1196.

"The relation of debtor and creditor being created by the papers and attendant facts, the deed was but a mortgage, and the right of redemption could not be cut off by any under-

standings or agreements then made." Hart v. Eppstein, 71 Tex. 752, 10 S. W. 85.

In our opinion, guided by the principles announced in the above authorities, there is ample evidence to warrant the finding of the trial court that the transaction between appellee and H. F. Wilcox constituted a loan and mortgage.

[3-5] The appellants present as error the action of the trial court in rendering judgment for the appellee, because they assert that even if the transaction is held to constitute a loan and mortgage, that the evidence fails to show that either the Delaware corporation, or the Texas corporation, had notice thereof; hence, they are each innocent purchasers and were entitled to judgment.

It is admitted that the inception of the transaction was the effort of appellee to obtain a loan from the Delaware corporation, and began negotiations with H. F. Wilcox, the president thereof. The testimony tends to show that as president he agreed to make the loan for the corporation, but thereafter for legal reasons took the loan individually. Hence, all the information relative to the transaction came to him as president of and while acting for the corporation, and it is chargeable with such knowledge.

In addition to the testimony of H. F. Wilcox, heretofore given, he testified that at the time he sold and assigned the lease to the Delaware corporation, he had in mind all of the facts and circumstances of the transaction; that the only thing he did relative to the sale of the lease to his company, the Delaware corporation, was to make up his mind to have the company buy it and pay him the $1,500 with interest thereon and take it; that there was not a soul acting for the corporation except himself, but that he thought he consulted with Mr. Dye, the vice president of both corporations, and probably explained the matter fully to him; that when he assigned the lease to his corporation, as an individual, he was dealing with the corporation, and as president of the corporation he was acting for it in the purchase of the lease, so he was dealing in two capacities, both as an individual for himself, and as president of the H. F. Wilcox Oil & Gas Company, the Delaware corporation; that when he sold the lease he was acting for himself with the corporation, and when he bought it he was acting for the corporation; that he was acting both with and for the corporation at the same time; that he made up his mind as H. F. Wilcox to sell the lease to the company, and as president of the company he made up his mind to buy the lease for the company; that he is the one who exercised the discretion to buy the lease for the corporation, and he alone directed the payment of the consideration therefor; that he did not know whether the Texas corporation paid any consideration to the Delaware corporation for

the assignment of the lease or not; that notwithstanding he is president of each company, he has made no investigation; that the Texas corporation was organized in 1926, and because this lease was Texas property, it is possible that he caused it to be assigned to the Texas corporation, without any consideration except to domesticate the business; that he thought the only idea in passing the title of the lease from the Delaware corporation to the Texas corporation was to domesticate the titles of all leases in Texas; that he did not think it was intended that one corporation should pay the other corporation anything; that the Texas corporation was intended simply for the purpose of passing title without consideration out of the Delaware corporation into the Texas corporation, for the purpose of domesticating in the Texas corporation the titles to the Texas land; that was his intention as general executive of both corporations; that he could not tell the court of a dollar consideration paid by the Texas corporation to the Delaware corporation for the assignment of the lease, save and except the convenience of the two corporations in handling their business; that as president he understood that the only reason for the lease being assigned by the Delaware corporation to the Texas corporation, was simply for the convenience of the two corporations in handling their business; that he never authorized or directed any consideration to be paid by the Texas corporation to the Delaware corporation for the lease; that Mr. Appleby, the secretary treasurer of both companies was in attendance upon court, but he had never made any investigation to learn if the Texas corporation paid any consideration for the lease.

The assignment of the lease to the Delaware corporation was executed by H. F. Wilcox, and the assignment from the Delaware corporation to the Texas corporation was executed by G. A. Dye, vice president. If, as H. F. Wilcox in substance testifies, he had in mind all of the facts and circumstances of the transaction between himself and appellee, at the time he assigned the lease to the Delaware corporation, and fully explained the matter to the vice president of said corporation, said corporation had actual knowledge of the facts and circumstances surrounding the transaction, and in our opinion the testimony is sufficient to warrant the trial court in finding that the Delaware corporation had notice that the transaction constituted a loan and mortgage.

In addition to the notice shown by the testimony, the record clearly reveals, under the law as we understand it, that notice was imputed to the Delaware corporation, and in either event it was not an innocent purchaser.

[6, 7] The general rule is well established that so long as an officer or agent of the corporation acts within the scope of his author-

ity, in good faith, the presumption is that he disclosed to his principal all facts within his knowledge. One of the exceptions to the rule is that if the agent, for his own benefit and advantage, deals with his principal, the presumption that he reveals all of the facts within his knowledge to the principal does not prevail.

"But there is a qualification of the foregoing exception which brings within the general rule, which charges the principal with knowledge possessed by the agent, those cases in which the officer or agent, though he act for himself or for a third person, is the sole representative of a corporation in the transaction in question. The ground of imputed knowledge is that when a principal has consummated a transaction, in whole or in part, through an agent, it is contrary to equity and good conscience that he should be permitted to avail himself of the benefits of the agent's participation without becoming responsible as well for his agent's knowledge as well as for his agent's acts. Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028. Some of the cases hold that the rule rests upon the principle of the legal identity of the principal and agent.

"When the officer transacts business with the corporation instead of for it, he is supposed to treat with it at arms' length, and not to disclose facts against his own interest. Wade on the Law of Legal Notice, § 683b. But a different status is created where the officer deals both with and for the corporation; where he as an individual deals with himself as agent for the corporation and as agent deals for the corporation, with himself as an individual, in one and the same transaction. In such a case we cannot conceive otherwise than that he as agent knows everything that he as an individual knows. He as an individual is present in person, and the corporation is present in him as its agent and representative. Everything known to him in his individual capacity concerning the transaction is known to him in his capacity as agent and representative of the corporation. When he assumes the duties of agent and representative of the corporation, in that transaction, there passes with him into that capacity all that he knew of the transaction in his private individual capacity. Where he is the sole representative of the corporation in the transaction, under such circumstances, the corporation is as wise as the customer or client. He is the corporation and he is the customer or client. The result, so far as notice is concerned, is not more favorable to the corporation than if the officer dealt with another officer or the board of directors of the corporation in the transaction first communicating to the other officer or board everything the first knew about it. In such case the corporation would be charged with the facts—yes; would know the facts— and the corporation would not be permitted, in

3 S.W.(2d)—33

equity and good conscience, to avail itself of the agent's participation in the transaction without becoming responsible for his knowledge. Neither should the corporation be permitted, in equity and good conscience, to avail itself of the acts of its officer in dealing with himself without being held to possess all the knowledge concerning that transaction that he possessed at the time thereof." Mays et al. v. First State Bank of Keller (Tex. Com. App.) 247 S. W. 845, and authorities cited therein.

[8, 9] Whether or not the Texas corporation had notice, in our view of the case, it is unnecessary to discuss, for the reason that we deem the evidence entirely sufficient to warrant a finding by the trial judge that the Texas corporation did not pay a valuable consideration to the Delaware corporation for the assignment of the lease (Houston Oil Co. of Texas et al. v. Hayden et al., 104 Tex. 175, 135 S. W. 1149), and without the payment of a valuable consideration the Texas corporation is not an innocent purchaser.

[10] The appellants assign as error the action of the trial court in admitting and excluding certain testimony. In our opinion, this assignment does not present error, but if improper testimony was admitted, the presumption obtains that the court founded his judgment on the competent testimony in the record. "It must be assumed that every judge who has heard improper evidence, upon concluding that it should not have been admitted, is able to and does in fact discard it from his consideration when deciding the cause." Creager v. Douglass, 77 Tex. 484, 14 S. W. 150. If there is sufficient competent evidence to support the finding, it is presumed that inadmissible evidence received over objection was not considered. Mallow v. Raynes (Tex. Civ. App.) 188 S. W. 23; Kingsville Cotton Oil Co. v. Dallas Waste Mills (Tex. Civ. App.) 210 S. W. 832; Pennington v. Fleming (Tex. Civ. App.) 212 S. W. 303; Broussard v. Le Blanc (Tex. Civ. App.) 182 S. W. 78.

[11] The record reveals without contradiction that no foreclosure of the lien given by appellee to H. F. Wilcox was had through court, and that the sales to each of the corporations were private sales without any attempt to comply with article 3810, R. C. S. 1925, which provides how all sales of real estate shall be made under the power conferred by deed of trust or other contract lien; and appellee's right of redemption was not affected by such private sales. Wylie v. Hays et al., 114 Tex. 46, 263 S. W. 563.

The judgment of the trial court is affirmed.